## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSHUA SMITH,
    *Plaintiff*,

    v.

CAPTAIN PEREZ, et al.
    *Defendants.*

No. 3:19-cv-1758 (VAB)

### INITIAL REVIEW ORDER

On November 7, 2019, Joshua Smith ("Plaintiff"), proceeding *pro se* and an inmate in the custody of the Department of Correction ("DOC"), formerly incarcerated at Osborn Correctional Institution ("Osborn"), filed this this civil rights Complaint under 42 U.S.C. § 1983 against Captain Perez, Lieutenant Perez, Lieutenant Ramos, Counselor Supervisor Long, Correction Officer West, Captain Colon, Correction Officer Musa, Correction Officer West, Deputy Warden Snyder, Osborn Warden Gary Wright, and Commissioner Scott Semple, in their official and individual capacities. Compl., ECF No. 1 (Nov. 7, 2019).

He alleges various Constitutional violations, and seeks damages and equitable relief.

For the following reasons, Mr. Smith's First Amendment, Eighth Amendment, and Fourteenth Amendment claims will proceed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On November 15, 2018, Mr. Smith allegedly was assigned to single cell status in the H-Pod inmate housing unit at Osborn, and worked within that housing unit. Compl. ¶ 15.

---

[1] All factual allegations are drawn from the Complaint.

The next day, on November 16, 2018, Mr. Smith allegedly received a Disciplinary Report for having violated a direct order, which is a Class B infraction of the Code of Penal Discipline, due to placement of his Digital Television Antenna outside the cell window. *Id.* ¶ 16. Mr. Smith, however, allegedly had never been ordered not to place the Digital Television Antenna in the window or to take it down from the window. *Id.* ¶ 17. The Digital Television Antenna allegedly is regularly sold in the prison commissary to inmates and allegedly must be in the window for reception. *Id.* ¶ 18.

Five other inmates within the H-Pod housing unit and a total of thirty inmate workers within the different Osborn housing units also allegedly received the same Disciplinary Report for the same infraction. *Id.* ¶ 19.

On November 26, 2018, Mr. Smith allegedly attended a disciplinary hearing on the Class B Disciplinary Report, adjudicated by Lieutenant Perez. *Id.* ¶ 20. Lieutenant Perez allegedly offered to allow Mr. Smith to plead guilty to the lesser Class C charge of a housing rule violation, and, if he did, he would not be moved from his housing assignment and he would not lose his job. *Id.* ¶ 21. Mr. Smith allegedly accepted the proffered offer and pleaded guilty to the Class C violation. *Id.* ¶ 22.

Lieutenant Perez allegedly should have thrown out the Disciplinary Report in light of the lack of evidence of any direct order. *Id.* ¶ 23. Mr. Smith allegedly accepted the plea deal only to protect his housing and employment assignments, because his writings to Wardens Semple and Wright allegedly were ignored. *Id.* at ¶ 24.

On November 30, 2018, despite Lieutenant Perez's promises, Mr. Smith allegedly was dismissed from his job and transferred to the Charlie-Pod ("C-Pod") housing unit. *Id.* ¶ 25. Allegedly, none of the other inmates who had allegedly received the same exact

Disciplinary Report as Mr. Smith lost their job, nor were they moved from their housing units. *Id.* ¶ 26.

On December 4, 2018, Mr. Smith allegedly wrote an Inmate Request Form to Deputy Warden Snyder, complaining that Captain Perez and Counselor Supervisor Long were discriminating against him and denying him equal protection with regard to his housing and employment. *Id.* ¶ 27.

Counselor Supervisor Long and Captain Perez allegedly conspired to use the Disciplinary Report as an excuse to deprive Mr. Smith of his single cell status and punish him for past grievances. *Id.* ¶ 28. Counselor Supervisor Long and Captain Perez allegedly also wanted inmates to be single-celled due to the DOC "Progressive" discipline policy for housing unit rule violations. *Id.* ¶ 29. Progressive discipline allegedly consists of increasing punishment for repeated violations of a housing unit rule prior to any formal disciplinary proceedings. *Id.* ¶ 30.

After Mr. Smith advocated for reinstatement of his employment, Counselor Supervisor Long and Captain Perez allegedly conspired to remove all of the other inmates from their housing and jobs from H-Pod. *Id.* ¶ 31. The five other inmates in the H-Pod with Mr. Smith, who had also received the same Disciplinary Report as Mr. Smith, allegedly were violent gang members who knew Mr. Smith. *Id.* ¶ 32. These five gang members allegedly complained about being moved and asked why they had to move. *Id.* ¶ 33. To punish and retaliate against Mr. Smith for advocating for his rights against Counselor Supervisor Long and Captain Perez, Captain Perez allegedly told the gang members: "Smith was making such a stink, crying about moving, that we have to move all of you so it looks fair." *Id.* ¶ 34.

The gang members allegedly labeled Mr. Smith as a "snitch" and allegedly started to make active threats to attack and kill Mr. Smith due to their having to move. *Id.* ¶ 35. Mr.

Smith allegedly feared for his life. *Id.* ¶ 36. A number of the gang members allegedly were serving extensive prison sentences for murder and gang violence. *Id.* ¶ 36. Mr. Smith allegedly was tormented and suffered severe mental anguish, high anxiety and sleepless nights that led to migraine headaches. *Id.* ¶ 36.

On or about December 13, 2018, Mr. Smith allegedly learned about a rumor going around the housing unit that at "Chow," the gang members intended to "jump" Smith and assault him with the goal of killing him. *Id.* ¶ 37.

On December 13, 2018, Mr. Smith allegedly believed himself to be at imminent risk. *Id.* ¶ 38. He allegedly went to the chow-hall armed with a "Lock-in-the-sock" and allegedly took proactive measures to defend himself by striking the leader and primary antagonist with the weapon. *Id.* ¶ 38. As a result, Mr. Smith allegedly received a Disciplinary Report for fighting. *Id.* ¶ 39. He allegedly pleaded guilty with sanctions imposed of fifteen days punitive segregation, thirty days loss of recreation, and thirty days of loss of telephone. *Id.*

Captain Perez allegedly engaged in a series of actions maliciously intended to harm, harass, and humiliate Smith. *Id.* ¶ 47. He allegedly intimidated Mr. Smith's inmate witnesses necessary to the Disciplinary Report. *Id.* ¶ 48, and allegedly told inmates that Smith was a coward and a snitch. *Id.* ¶ 49. He allegedly orchestrated the seizure of "Specialty Footwears" Mr. Smith was authorized to possess pursuant to a settlement agreement stemming from *Smith v. Sieminski*, CV-07-5011412.[2] *Id.* ¶ 50. Captain Perez, with the assistance of Correction Officer

---

[2] The Court takes judicial notice of the Connecticut Judicial Branch website, which contains a public record for *Smith v. Sieminski*, CV-07-5011412 (April 24, 2008), *available at* http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHDCV075011412S. In his Complaint, Mr. Smith's allegation has referenced this case as *Smith v. Sieminski*, CV-07-5011612 (April 17, 2008). However, a search for that case number on the website returned no result.

Musa, also allegedly orchestrated the theft, destruction, and seizure of Mr. Smith's other personal property. *Id.* ¶ 51.

On January 8, 2019, Captain Perez allegedly informed Mr. Smith that he was being discharged from the Restrictive Housing Unit ("R.H.U.") at the completion of his punitive segregation. *Id.* ¶ 57. He was to be returned to general population without single cell status. *Id.* ¶ 57. Mr. Smith allegedly complained that he had single-cell status because of certain psychological and sociological conditions under the DOC guidelines. *Id.* ¶ 58. Mr. Smith allegedly was extremely distressed that he would be returned to the housing unit with inmates who were allegedly hostile to Mr. Smith due to Captain Perez's representations about Mr. Smith, and feared being placed in a cell with gang members or their associates. *Id.* ¶ 59. Mr. Smith expressed these concerns and fears to "Perez, Wright, and Snyder." *Id.* ¶ 60.

Defendants allegedly issued Mr. Smith a Class A Disciplinary Report for "flagrant disobedience," asserting Smith refused housing, and imposed sanctions. *Id.* ¶ 61.

On January 9, 2019, defendants allegedly treated Mr. Smith like a mental health patient and transferred him to Garner Correctional Institution ("Garner"). *Id.* ¶ 62. Defendants, however, allegedly failed to properly inform Garner staff of Mr. Smith's protective status and his psychological and sociological concerns. *Id.* ¶ 63.

On May 17, 2019, Mr. Smith allegedly was transferred back to Osborn from Garner. *Id.* ¶ 70. Upon arrival at Osborn, he allegedly learned that he would be placed in the general population housing unit managed by Captain Perez. *Id.* ¶ 71. Mr. Smith allegedly repeatedly told staff he was supposed to have a single cell, and Captain Perez allegedly taunted and harassed Smith, calling him a coward, a snitch, and racist names, including the word "nigger" in front of other inmates. *Id.* ¶ 72.

5

Captain Perez allegedly mocked Smith for his many grievances and complaints filed against him. *Id.* ¶ 73. On May 17, 2019, Lieutenant Ramos and Correction Officer West allegedly issued Mr. Smith another Class A Disciplinary Report for "Refusing Housing." *Id.* ¶ 74. Ramos and West allegedly were in conspiracy with Captain Perez to punish Mr. Smith for his psychological and sociological concerns and grievances. *Id.*

Mr. Smith allegedly was placed in the R.H.U. *Id.* ¶ 75. On June 4, 2019, a hearing allegedly was held, and Lieutenant Perez allegedly found Mr. Smith guilty and imposed sanctions of fifteen days of punitive segregation, sixty days loss of phone, sixty days loss of commissary, and loss of twenty days of statutory good time credits. *Id.* ¶ 75.

On June 12, 2019, Mr. Smith allegedly was continuing to address his legitimate safety concerns and misconduct of Captain Perez, when Defendants allegedly orchestrated his transfer to Garner again. *Id.* ¶ 76. Mr. Smith allegedly lost property and suffered extreme emotional distress at the hands of Defendants who remained deliberately indifferent to his physical and mental well-being. *Id.* ¶ 77.

 The Defendants allegedly knew, or should have known, that Mr. Smith would be harmed and injured as a direct and proximate result of their actions or lack thereof. *Id.* ¶¶ 40, 52, 64, 78. Mr. Smith allegedly was harmed and injured as a result of the Defendants' conduct. *Id.* ¶¶ 41, 53, 65, 79. His harms allegedly include loss of his job; loss of his housing; loss of his single cell; severe anxiety and emotional distress due to his fearing death and migraine headaches; loss of personal property; loss of good time and Risk Reduction Earned Credit (RREC); a significant period of time in punitive segregation; and loss of personal association with inmates with whom he used to associate. *Id.* at ¶¶ 41, 53, 65, 77, 79.

On November 7, 2019, Mr. Smith filed his Complaint against Captain Perez, Lieutenant Perez, Lieutenant Ramos, Counselor Supervisor Long,[3] Correction Officer West, Captain Colon, Correction Officer Musa, Correction Officer West, Deputy Warden Snyder, Osborn Warden Gary Wright, and Commissioner Scott Semple, in their official and individual capacities. Compl.

He alleges violations of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Eighth Amendment to the United States Constitution. CITE. He also alleges violation of Article One §§ 1, 4, 16, 14, and 20 under the Constitution of the State of Connecticut.[4] CITE. He seeks damages, a declaratory judgment, and an injunction. CITE.

Mr. Smith is proceeding *in forma pauperis.* Mot. to Proceed *In Forma Pauperis*, ECF. No. 2 (Nov 7, 2019); Order, ECF No. 7 (Nov. 21, 2019) (granting the prior motion).

Mr. Smith has filed a motion to amend to add the first name of Captain Perez and his current work address. Mot. to Amend, ECF No. 8 (Dec. 4, 2019). This motion to amend will be granted.

## II.    STANDARD OF REVIEW

---

[3] Defendant Counselor Supervisor Long is included in the description of the parties, but his name does not appear in the caption. Mr. Smith has, however, named a defendant Counselor Supervisor in the case caption. The Court construes this unnamed Counselor Supervisor as defendant Long. "[C]ourts have found *pro se* complaints to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants." *Imperato v. Otsego Cty. Sheriff's Dep't*, No. 313CV1594 (BKS/DEP), 2016 WL 1466545, at *26 (N.D.N.Y. Apr. 14, 2016) (collecting cases).

[4] The Court limits its review under 28 U.S.C. § 1915A to federal law claims. The core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. If viable federal law claims remain, then the validity of any accompanying state law claims may be appropriately addressed through a motion to dismiss or motion for summary judgment. More generally, a determination under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims, for example through a motion to dismiss or motion for summary judgment.

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual

enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

In his complaint, Mr. Smith alleges violations of: (1) the Equal Protection Clause of the Fourteenth Amendment; Compl. ¶ 43; (2) the First Amendment, *id.* ¶¶ 44, 55, 68, 82; and (3) the Eighth Amendment. *Id.* ¶¶ 45, 67, 81. The Court's initial review will consider the plausibility of these alleged constitutional violations.[5]

### A.   Claims Against Commissioner Semple and Captain Colon

Mr. Smith has named Commissioner Semple and Captain Colon as defendants, and included them as defendants in the description of the parties. He has not, however, alleged any facts regarding the acts or omissions of these defendants in connection with the violation of his federal or constitutional rights. Mr. Smith alleges that he wrote to Commissioner Semple at some point before his acceptance of the plea deal on the November 16, 2018 Disciplinary

---

[5] In his Complaint, Mr. Smith has alleged three counts. In Count One, he alleges violation of the Fourteenth, First, and Eighth Amendments, Compl. ¶¶ 43–45; in Count Two, he alleges retaliation in violation of the First Amendment; *id.* ¶ 55; in Count Three, he alleges violations of the First and Eighth Amendments, *id.* ¶¶ 67, 68, 81, 82.

Report. It is unclear, however, whether his writing to Semple—which allegedly occurred before the Complaint's asserted constitutional violations—has any relevance to the constitutional violations alleged in this action.

Because the allegations of the Complaint establish no connection between defendants Commissioner Semple and Captain Colon and the alleged constitutional violations, the individual and official capacity claims against Commissioner Semple and Captain Colon will be dismissed. *Reese v. Lightner*, No. 3:18CV1922 (KAD), 2019 WL 2176342, at *4 (D. Conn. May 20, 2019) (dismissing official and individual capacity claims where plaintiff failed to allege facts regarding the acts or omissions of defendants); 28 U.S.C. § 1915A(b)(1).

### B.   Official Capacity Claims

Mr. Smith has alleged claims against all Defendants in their official capacities. Claims for money damages against Defendants, who are state employees, in their official capacities, must be dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

To the extent he alleges an ongoing constitutional violation and seeks injunctive relief, Mr. Smith may proceed against Defendants in their official capacities. See *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *see also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief'

from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). This exception to Eleventh Amendment immunity, however, "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

Mr. Smith's requests for declaratory relief in the form of a "finding that Defendants['] actions were unconstitutional." Compl. ¶¶ 42(C), 66(C) 80(C). This request seeks retrospective relief and is therefore barred by the Eleventh Amendment. *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.").

Mr. Smith also seeks prospective injunctive relief ordering defendants to reinstate his single cell status and his job assignment and to protect his mental well-being in accordance with the Administrative Directives. Compl. ¶¶ 42(D), 66(E), 80(D). Mr. Smith's injunctive relief claim may only proceed against Defendants in their official capacities if they plausibly have the authority to grant him the prospective relief. *See Vaughan v. Aldi*, No. 3:19-CV-00107 (JAM), 2019 WL 1922295, at *2 (D. Conn. Apr. 29, 2019); *Babyrev v. Lanotte*, No. 16 CIV. 5421 (ER), 2018 WL 388850, at *5 (S.D.N.Y. Jan. 11, 2018).

It is plausible that the warden at Osborn has the authority to grant him his requested relief. *See Vaughan*, No. 3:19-CV-00107 (JAM), 2019 WL 1922295, at *2 (prison warden was proper defendant for official-capacity claim seeking injunctive relief, although he lacked personal involvement in alleged constitutional violation). Mr. Smith's claim for injunctive relief, however, cannot proceed against defendant Warden Wright, who is no longer in office and has no authority to grant him prospective relief.[6] *See Marshall v. Annucci*, No. 16-CV-8622 (NSR),

---

[6] The Court takes judicial notice of the DOC website showing that the current warden of Osborn is Nick Rodriguez. Osborn Correctional Institution, CONNECTICUT STATE DEPARTMENT OF CORRECTION,

2018 WL 1449522, at *8 (S.D.N.Y. Mar. 22, 2018) (retired defendants do not have the authority to rectify any ongoing constitutional violations).

Federal Rule of Civil Procedure 25(d) provides that "[a]n action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,] [and] [t]he officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). Although Mr. Smith has not alleged whether any of the Defendants have authority to grant him the relief sought, the Court will permit his injunctive relief claim to proceed against the current Commissioner Rollin Cook and current Warden of Osborn Nick Rodriguez, who are substituted for Defendants Semple and Wright. Fed. R. Civ. P. 25(d).

### C.    Equal Protection Claim

Mr. Smith alleges that his Fourteenth Amendment equal protection rights were violated because the defendants removed him from his housing and employment without "applying that same punitive measure" to the other inmates who had received the same Disciplinary Report regarding placement of the DTA. *See* Compl. ¶¶ 19, 26, 43.

The Fourteenth Amendment Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to prove a violation of the Equal Protection Clause, a plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect

---

https://portal.ct.gov/DOC/Facility/Osborn-CI (last visited May 8, 2020); *see Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record.").

class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Thus, to

prevail on an equal protection claim, a plaintiff must allege that (1) compared with others

similarly situated, he or she was treated differently; and (2) that such different treatment was

based on impermissible considerations such as race, national origin, religion, or some other

protected right. *Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011) (citation

omitted).

A plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges

that [he] has been intentionally treated differently from others similarly situated and that there is

no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562,

564 (2000). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree

of similarity between themselves and the persons to whom they compare themselves." *Clubside*

*v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).

Mr. Smith has not alleged that he is a member of a protected class or that he was treated

differently due to a protected classification. Upon initial review, the Court construes Mr. Smith

to assert a "class of one claim" based on his allegation that defendants intentionally deprived him

of his housing assignment and employment position but did not impose the same punitive

measures on other inmates who had received the same disciplinary report. Compl. ¶ 43.

Mr. Smith's equal protection claim does not clearly allege which Defendants he seeks to

hold liable. At this initial stage in action, the Court nevertheless will permit Mr. Smith's claim to

proceed against Defendants Lieutenant Perez, Deputy Warden Snyder, Captain Perez and

Counselor Supervisor Long, who allegedly all have some involvement in the events that resulted

in the loss of his housing assignment and employment. *See Farrell v. Burke*, 449 F.3d 470, 484

(2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

This ruling is without prejudice to the right of Defendants to file a motion to dismiss at a later stage of the case.

### D.      First Amendment Claim

The First Amendment protects "the right of the people . . . to petition the government for the redress of grievances." U.S. Const. amend. I. "The rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment." *Safepath Sys. LLC v. N.Y.C. Dep't of Educ.*, 563 F. App'x 851, 857 (2d Cir. 2014).

"To prevail on a First Amendment retaliation claim, a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019); *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted). "An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).

In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). "Some of the facts often used to determine retaliatory motive may include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty

14

at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, No. 3:18-CV-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019).

Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotations and citation omitted).

Mr. Smith alleges retaliation due to his filing grievances and complaints in violation of his First Amendment rights to free speech, access to courts, and redress of grievances. Compl. ¶¶ 44, 55, 68.

 Specifically, Mr. Smith alleges that Captain Perez and Counselor Supervisor Long retaliated against him by "maliciously identifying" him as the reason for moving the other inmates from their "Housing & Employment;" *id.* ¶ 44; that Captain Perez told inmates Mr. Smith was a coward and a snitch, intimidated his inmate witnesses, and orchestrated seizure of his property with assistance of Correction Officer Musa; *id.* ¶¶ 48-51; that in response to his complaints, defendants transferred him to Garner; *id.* ¶¶ 62, 68, 82; and that Lieutenant Ramos, Correction Officer West, and Captain Perez conspired to issue Mr. Smith a Class A Disciplinary

Report due to his refusing housing, and Captain Perez orchestrated that he be transfered again to Garner, *id.* ¶¶ 74, 82.

### 1.     Retaliation by Captain Perez and Counselor Supervisor Long

Mr. Smith has alleged that he filed an Inmate Request Form on December 4, 2018, complaining that Captain Perez and Counselor Supervisor Long were discriminating against him by depriving of him of his housing and job assignments, and, then, Captain Perez and Counselor Supervisor Long retaliated against him by informing the other inmates that he was the reason for their change in housing and employment. *Id.* ¶¶ 27, 44.

Here, Mr. Smith has alleged a plausible claim of retaliation. First, he has alleged that he engaged in protected speech by filing an Inmate Request Form complaining about Captain Perez and Counselor Supervisor Long. *Id.* ¶ 27; *see Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (filing a grievance is constitutionally protected).

Second, Mr. Smith has alleged sufficient facts to support an inference that the Defendants took adverse action against him by allegedly putting his safety at risk in the prison environment, which would deter an individual of ordinary firmness from engaging in filing further grievances.[7] *Llewellyn v. Aldi*, No. 3:19-CV-1030 (KAD), 2019 WL 4139484, at *4 (D. Conn. Aug. 30, 2019) (finding plausible retaliation claim based on decision to place plaintiff with an inmate who later attacked him).

Third, Mr. Smith has alleged facts to satisfy the causal requirement for a retaliation claim. Specifically, he has alleged that by December 13, 2018, nine days after he filed his grievance against Captain Perez and Counselor Supervisor Long, he learned that certain inmates

---

[7]Mr. Smith has also alleged that Captain Perez and Counselor Supervisor Long took adverse action against him by informing other inmates that "Smith was making such a stink, crying about moving, that we have to move all of you so it looks fair." Compl. ¶ 34. He alleges that this information caused the other inmates to make "active threats to attack and kill him for their being moved." *Id.* ¶ 36.

had made plans to assault and kill him. Thus, the Complaint suggests that Captain Perez and Counselor Supervisor Long identified Mr. Smith as the reason for the inmates' change in housing and employment shortly after Mr. Smith filed his grievance against them. *See Cruz v. Hillman*, No. 01-CV-4169 (DAB), 2002 WL 31045864, at *6 (S.D.N.Y. May 16, 2002) (finding plaintiff's claim survived motion to dismiss based on allegation that adverse action followed closely after the protected speech). Although temporal proximity is sufficient to state a plausible claim, further evidence of retaliatory animus is required to enable a prisoner to survive summary judgment and proceed to trial on a retaliation claim. *Washington v. Afify*, 681 F. App'x 42, 46 (2d Cir. 2017).

The Court will permit this claim to proceed against Captain Perez and Counselor Supervisor Long, who are the only named Defendants personally involved in this retaliation claim.

## 2. Retaliation by Captain Perez and Correction Officer Musa

Mr. Smith asserts that Captain Perez proceeded to harass, harm, and humiliate him by intimidating his inmate witnesses relevant to his Disciplinary Report; inform inmates that he was a snitch and a coward; and orchestrate seizure, theft and destruction of his property with Officer Musa. Compl. ¶¶ 47-51. The Court construes these allegations to claim that Captain Perez, with assistance from Officer Musa, continued to retaliate against him after December 13, 2018, the date Mr. Smith was issued the Disciplinary Report for fighting.

For purposes of initial review, the Court finds that the allegations concerning Captain Perez's conduct sufficiently state adverse action that could deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. *See Garcia v. Semple*, No. 3:18-CV-1226 (SRU), 2019 WL 5597771, at *18 (D. Conn. Oct. 30, 2019) (noting that "courts

17

within the Second Circuit have held that a prison official's decision to confiscate or destroy an inmate's property might rise to the level of adverse conduct" (internal citations omitted)); *Ford v. Palmer*, 539 F. App'x 5, 7 & n.2 (2d Cir. 2013) (reversing dismissal of retaliation claim based on threat to poison inmate, indicating that alleged threat should be considered in context of multiple instances of adverse conduct against inmate). The Complaint does not state when Captain Perez allegedly committed these acts. The allegations, however, suggest Captain Perez committed these acts to continue retaliating against Mr. Smith based on Mr. Smith's prior grievance in December. The Court will permit this claim to proceed against Captain Perez for further development.

But the Court will dismiss the retaliation claim against Officer Musa based on his alleged assistance in the theft, destruction, and seizure of Mr. Smith's property. Mr. Smith's allegations of retaliation by Officer Musa are conclusory. He has failed to allege any causal connection between Officer Musa's conduct and Mr. Smith's exercise of his First Amendment rights or any facts even suggesting that Officer Musa was aware of Mr. Smith's prior complaint against Captain Perez.

3.       **Transfer to Garner**

Mr. Smith alleges that defendants treated him like a mental health patient and transferred

him to Garner in response to his complaints about their "violation of DOC's Policies &

Directives, Lack of Professionalism and utter disregard for Plaintiff's physical and mental well-

being." Compl. ¶ 62. Mr. Smith's Complaint may be construed to allege that he was transferred

after he expressed that he feared for his life about returning "to the Housing Unit with the

inmates whom Captain Perez had antagonized against him[.]" *Id.* ¶¶ 60-61.

Transfer of an inmate to another prison facility in response to that inmate's exercise of a

protected right under the Constitution may constitute adverse action to state an

actionable retaliation claim. *See Smith v. Levine*, 510 F. App'x 17, 21 (2d Cir. 2013) ("We had

stated, at least as early as 1998, that, while '[a] prisoner has no liberty interest in remaining at a

particular correctional facility,' prison authorities 'may not transfer an inmate in retaliation for

the exercise of constitutionally protected rights.'") (quoting *Davis v. Kelly,* 160 F.3d 917, 920

(2d Cir. 1998)); *Garcia v. Semple*, No. 3:18-CV-1226 (SRU), 2019 WL 5597771, at *18 (D.

Conn. Oct. 30, 2019). In most circumstances, however, the transfer of a prisoner is not

considered an adverse action absent any aggravating factors or circumstances showing a

deterrent effect on the inmate. *See Miller v. Rao*, No. 08-B-2469, 2013 WL 6240672, at *10

(W.D.N.Y. Dec. 3, 2013) (collecting cases).

Mr. Smith alleges he was transferred to Garner, a mental health facility, and that he was

harmed as result of Defendants' failure to inform Garner staff about his "protective status and his

psychological and sociological concerns." Compl. ¶ 63. Mr. Smith, however, had previously

expressed his concerns about being housed with certain inmates at Osborn, *id.* ¶¶59, 60, and he

complained that his housing at Osborn did not meet his "psychological and sociological" conditions,

*id.* at ¶ 58. In light of these circumstances, a transfer to another institution such as Garner does not

suggest adverse action. Mr. Smith's allegation that he was harmed by the transfer is conclusory. He has provided no indication of how the transfer to Garner presented any aggravating circumstances or had any deterrent effect.

Thus, this claim of retaliation based on the transfer to Garner will be dismissed.

**4.      Disciplinary Report and Transfer Back to Garner**

Mr. Smith asserts Lieutenant Ramos and Correction Officer West allegedly conspired with Captain Perez to punish him for his psychological and sociological concerns and for his grievances against Captain Perez, and that they issued him a Class A Disciplinary Report for "Refusing Housing" rather than properly handle his safety concerns. Compl. ¶ 74. This claim alleging retaliation by Lieutenant Ramos and Correction Officer West must be dismissed because Mr. Smith's claim of the conspiracy between Lieutenant Ramos and Correction Officer West with Captain Perez is wholly conclusory.

There are no allegations that Lieutenant Ramos or Correction Officer West knew about any prior grievances filed against Captain Perez, formed a conspiracy with Captain Perez, nor has Mr. Smith alleged any other conduct that causally connects the alleged issuance of the Disciplinary Report by Lieutenant Ramos and Correction Officer West to any grievances against Captain Perez. *See Ramos v. Semple*, No. 3:18-CV-1459 (VAB), 2019 WL 2422875, at *3 (D. Conn. June 10, 2019) ("There are, however, no facts showing that either defendant even knew about the shakedown or the stolen property until more than one month after the events occurred, nor are there any facts showing that such events were causally connected to the earlier lawsuit.").

Mr. Smith's allegation that Captain Perez orchestrated his re-transfer on June 12, 2019, to Garner is likewise conclusory. This claim also fails because Mr. Smith has not alleged any facts

suggesting that his transfer to Garner constituted a plausible adverse action.[8] These allegations of retaliation must be dismissed.

### 5.      Denial of Access to the Courts Claim

A right of access to the courts correlatively means a right to be free from obstruction of this right by the government, as the Second Circuit has recognized. *Whalen v. Cty. of Fulton*, 126 F.3d 400, 406 (2d Cir. 1997) ("The constitutional right of access [to the courts] is violated where government officials obstruct legitimate efforts to seek judicial redress."). Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials. *See Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986).

To prevail on a claim for denial of access to the courts, the plaintiff must show that the defendants' actions were deliberate and malicious, and that the actions caused him to suffer an actual injury. *See Beliezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010). To demonstrate an actual injury, the plaintiff must show that he suffered "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis v. Casey*, 518 U.S. 343, 348 (1996); *see also Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir. 1997).

Mr. Smith has not alleged that any facts suggesting that the defendants' conduct obstructed or interfered with his ability to pursue contemplated or existing litigation in court. To the extent that Mr. Smith asserts a claim of denial of access to the courts, this claim must be dismissed.

---

[8] Mr. Smith has alleged that he lost property and suffered extreme emotional distress as a result of Defendants' conduct. Compl. ¶ 77. However, he has not alleged that the loss of property had a connection with the alleged retaliatory transfer to Garner.

E.       **Eighth Amendment Claim**

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted). To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of "the minimal civilized measure of life's necessities" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *Id.* at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). When evaluating a claim for failure to protect an inmate from harm or deliberate indifference to inmate safety, the court considers "the facts and circumstances of which the official was aware at the time he acted or

22

failed to act." *Hartry v. Cty. of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

Mr. Smith has alleged a plausible violation of the Eighth Amendment against Captain Perez and Counselor Supervisor Long: these defendants allegedly exposed him to a risk of harm by providing the other inmates information that identified Mr. Smith as a snitch or the cause of losing their housing and employment assignment, and then by placing him in housing with these inmates who were likely hostile and retaliatory toward him. *See Billips v. NYC DOCS*, No. 18-CV-1719 (ER), 2019 WL 2023698, at *4 (S.D.N.Y. May 8, 2019) (finding plausible risk of harm based on allegations that prison officials placed plaintiff, who was a member of the Crips with members of the Bloods, a rival gang, and announced to the Blood member inmates that plaintiff was a member of the Crips); *Fonck v. Semple*, No. 3:18-CV-1283 (KAD), 2019 WL 1763081, at *3 (D. Conn. Apr. 22, 2019) (finding plausible claim of deliberate indifference to inmate safety based on allegation that correction officer placed his Offender Accountability Plan on his bunk facing up so that other inmates could learn of his classification).

Additionally, Mr. Smith has alleged facts suggesting that Warden Wright and Deputy Warden Snyder were informed about Mr. Smith's concerns about being housed with the "antagonistic" inmates at Osborn. Compl. ¶¶ 59–60. A plaintiff may demonstrate personal involvement of a supervisory official where "the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring[.]" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[9]

---

[9] The Second Circuit has observed that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). Without further Second Circuit guidance on this issue, however, the Court presumes that the categories outlined in *Colon* remain valid for the purposes of ruling on this motion.

Although Mr. Smith's allegations with respect to Warden Wright and Deputy Warden Snyder are thin, he has alleged that defendants disregarded his safety concerns and well-being. *Id.* ¶ 67, 81. Construing his allegations liberally, the Court finds that Mr. Smith has sufficiently alleged supervisory liability against Warden Wright and Deputy Warden Snyder on his Eighth Amendment claim.

Accordingly, the Court will permit Mr. Smith's Eighth Amendment claim to proceed against Captain Perez, Counselor Supervisor Long, Warden Wright, and Deputy Warden Snyder.

## ORDERS

The Court enters the following orders:

(1) The Motion to Amend **[ECF No. 8]** is **GRANTED**. The Court takes notice that Captain Perez's first name is Brian and that his current workplace is at the Hartford Correctional Center.

(2) The case shall proceed as to Mr. Smith's Fourteenth Amendment Equal Protection Clause claim against Lieutenant Perez, Deputy Warden Snyder, Captain Brian Perez, and Counselor Supervisor Long in their individual capacities; his First Amendment retaliation claim against Captain Perez and Counselor Supervisor Long in their individual capacities; and his Eighth Amendment claim against Captain Perez, Counselor Supervisor Long, Warden Wright, and Deputy Supervisor Snyder in their individual capacities.

Mr. Smith's request for declaratory relief is **DISMISSED** as barred by the Eleventh Amendment, but his claim for injunctive relief may proceed against Commissioner Rollin Cook and Warden Nick Rodriguez in their official capacities.

The case is **DISMISSED** as to the following Defendants: former Commissioner Semple, Captain Colon, Lieutenant Ramos, Correction Officer West, and Correction Officer Musa. If Mr.

Smith believes he can allege facts to cure the deficiencies identified in this ruling, he may file a motion to amend and attach an amended complaint by **June 12, 2020**.

(3) The Clerk of Court shall verify the current work addresses for Lieutenant Perez, Deputy Warden Snyder, Warden Wright, Captain Brian Perez, and Counselor Supervisor Long with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses by **May 29, 2020**, and report on the status of the waiver request by **June 5, 2020**. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The Clerk of Court shall prepare a summons form and send an official capacity service packet, including the Complaint (ECF No. 1), and this Initial Review Order on the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendants Commissioner Rollin Cook and Warden Nick Rodriguez in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, by **May 29, 2020** and file a return of service **by June 8, 2020**.

(5) The Clerk of Court shall mail a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) Defendants shall file their response to the complaint, either an Answer or motion to dismiss, by **July 17, 2020**. If the defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **November 13, 2020**. Discovery requests need not be filed with the Court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed by **December 18, 2020**.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11) If Mr. Smith changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Smith must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Smith has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(12) Mr. Smith shall utilize the Prisoner Efiling Program when filing documents with the court. Mr. Smith is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of May, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE