# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JOSHUA SMITH,
*Plaintiff,*

v.                                                    No. 3:19-cv-1758 (VAB)

PEREZ, ET AL.
*Defendants.*

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

On November 7, 2019, Joshua Smith ("Mr. Smith"), an inmate who is currently housed at

Osborn Correctional Institution ("Osborn") under the custody of the Department of Correction

("DOC"),[1] filed this civil rights Complaint under 42 U.S.C. § 1983 against Captain Perez,

Lieutenant Perez, Lieutenant Ramos, Counselor Supervisor Long, Correction Officer West, Captain Colon,

Correction Officer Musa, Correction Officer West, Deputy Warden Snyder, Osborn Warden Gary

Wright, and Commissioner Scott Semple, in their official and individual capacities. Compl., ECF No.

1 (Nov. 7, 2019) ("Compl.").

On initial review, the Court determined that Mr. Smith's case should proceed on his First

Amendment Retaliation claim against Captain Perez[2] on his individual capacity for damages. Initial

Review Order at 17, ECF No. 9 (May 8, 2020) ("IRO"). The Court also permitted Mr. Smith to

proceed on his request for injunctive relief against defendants Cook and Rodriguez in their official

capacities. *Id.* at 11. Defendants filed a motion to dismiss, *see* Def.'s Mot. to Dismiss, ECF No. 43

---

[1] The Court takes judicial notice of the information on the publicly available Connecticut DOC website. *See Inmate Information*, State of Connecticut Department of Corrections,
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=223489; *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record").

[2] Mr. Smith initially named Counselor Supervisor Long as a defendant in this case. Mr. Smith, however, filed a notice of Voluntary Dismissal asking the Court to dismiss Counselor Supervisor Long form the case, which the Court granted. *See* Order, ECF No. 53 (Feb. 4, 2022).

(Apr. 2, 2021) ("Mot. to Dismiss"), which the Court granted in part and denied in part, *see* Order, ECF No. 50. As result of the Court's Order on the motion to dismiss, and Mr. Smith's voluntary dismissal of certain defendants in this case, *see* Notice of Voluntary Dismissal, ECF No. 52, there are only three remaining defendants in this case: Captain Perez, Commissioner Rollin Cook and Warden Nick Rodriguez (collectively, "Defendants").

Defendants filed a motion for summary judgment, arguing that Mr. Smith failed to comply with the Prison Litigation Reform Act ("PLRA") and cannot establish the requisite element of his retaliation claim against Captain Perez. *See* Defs.' Mot. for Summ. J., ECF No. 62 (June 29, 2022) (Mot.); Mem. in Support of Mot. for Summ. J., ECF No. 62-1 (June 29, 2022) ("Mem."). Mr. Smith filed an opposition. *See* Pl.'s Opp'n to Defs.'s Mot., ECF No. 87 (Mar. 21, 2023).

For the reasons that follow, Defendants' motion for summary judgment is **DENIED** without prejudice to renewal.[3]

---

[3] Ordinarily, a motion for summary judgment would be either granted or denied. In this instance, however, given the age of this case and the considerable time that has lapsed between the original filing of this motion and a response—time permitted by this Court—the most expeditious way to move this case forward is to address this motion as soon as possible without waiting for a reply brief from the Defendants, while giving the Defendants another opportunity to address any issues raised here to be renewed at a later time, if they believe the circumstances warrant it. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."). Indeed, the renewal of the relief sought here can be sought in conjunction with any other motions *in limine* filed with the parties' Joint Trial Memorandum, a deadline to be set in a separate order.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[4]

The following factual background reflects the Court's review of the Complaint, Defendants' Local Rule 56(a)1 statements of fact, and supporting exhibits filed by all parties.

### 1.  The Parties

Mr. Smith is a sentenced prisoner who was housed at Osborn at the time the alleged constitutional violations occurred. Ex. A to Pl.'s Opp'n to Defs.' Mot. for Summ. J. ¶ 7, ECF No. 87-1 ("Smith Affidavit"); Defs.' Local Rule 56(a)(1) Statement of Material Fact ¶ 6, ECF No. 62-1 ("SOMF"). Until around November 30, 2018, Mr. Smith was employed as a Chapel Janitor. Smith Affidavit ¶ 10. For seven years prior to the November 16, 2018, Mr. Smith had no violations of any Direct Orders from prison officials. *Id.* ¶ 8.

Captain Perez currently served as a Deputy Warden at the Brooklyn Correctional Institution. Ex. H to Defs.' Mot. ¶ 2, ECF No. 62-11 ("Perez Declaration"). In 2018 and 2019, Captain Perez held the position of Captain at Osborn. *Id.* ¶ 3.

### 2.  November 2018 Infraction

On February 25, 2018, Mr. Smith submitted a formal complaint against four correctional to Commissioner Scott Semple, alleging favoritism to specific inmates. Smith Affidavit ¶ 9.

On November 15, 2018, while Mr. Smith was at his job placement, Captain Perez called Mr. Smith's manager and ask that Mr. Smith return to his unit. Smith Affidavit ¶ 10. Captain

---

[4] D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."). Local Rule 56(a)(2) requires the party opposing summary judgment to submit a Local Rule 56(a)(2) Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)(1) Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)(2), 56(a)(3).

Perez, who has now become a unit manager over the unit subject to Mr. Smith's February 25, 2018 formal complaint, *id.* ¶ 11. Captain Perez directed Officer Rivera, *id.* ¶ 10, to cite Mr. Smith with a class B infraction for possession of a digital television antenna, *id.* ¶ 11;  Ex. C to Opp'n at 10, ECF No. 87-1.

Digital television antennas are approved electronic devices which inmates can order from the Connecticut Department of Correction Electronic Order Form. *See* Ex. B to Opp'n at 8, ECF No. 87-1 ("Smith Purchase Order"). Mr. Smith placed an order for the television antenna and a coaxial cable on June 8, 2018, which prison officials approved on June 11, 2018. *Id.*

As of November 15, 2018, Mr. Smith was the first inmate to be charged with a Class B infraction for placing a digital television antenna outside his cell window. *Id.* ¶ 13. Inmates convicted of Class B Disciplinary Report lose their single cell housing status and job assignments. Ex. D to Opp'n at 13, ECF No. 87-1, ("Smith Advisory Report").

### 3.  Mr. Smith's Initial Complaint Regarding the November 15, 2018 Incident

On November 26, 2018, Mr. Smith submitted an advisory report, requesting a progressive discipline for his television antenna infractions. Smith Advisory Report. In the report, Mr. Smith stated that he "was never told by any staff in H-Block not to have an antenna outside of [his] window." *Id.* Mr. Smith noted that he had not been cited for violating a Direct Order for seven years before November 18, 2018. *Id.* Moreover, he added, there were no published unit rules prohibiting television antenna's from being placed on prisoner's cell windows. *Id.* "[A]s a prisoner who has been incarcerated for over 24 years," Mr. Smith continued, "I would not jeopardize my job, housing, over not complying with an officer's order." *Id.* In light of these facts, Mr. Smith "asked for progressive discipline on this issue." *Id.* The infraction allegedly was subsequently reduced to a class C offense. Smith Affidavit ¶ 14; Ex. E to Defs.' Mot. at 13, ECF

4

No. 62-8.

At the time, a class C offense allegedly did not result in housing lost or job removal. Ex. H to Opp'n at 33, ECF No. 87-1 ("Snyder and Otero-Negron Email"); *cf.* Ex. D to Opp'n at 13 (noting that prisoners convicted of Class A and B Disciplinary Reports will lose their housing and job assignments). Nevertheless, on November 30, 2018, Mr. Smith allegedly was removed from his job as a Chapel Janitor and lost his single cell housing status as a result of the class C infraction. *See* Ex. B to Defs.' Mot., ECF No. 62-5 at 4 ("Dec. 2018 Grievance"); *see also* Ex. E to Defs.'s Mot. at 6 (noting that Mr. Smith was "the first one" to lose his housing status and his job over the class C infraction).

### 4. Mr. Smith's Complaint to Deputy Warden Otero-Negron

On December 5, 2018, Mr. Smith sent a letter to Deputy Warden Otero-Negron seeking assistance to resolve his job and housing issues. Ex. E to Opp'n at 15, ECF No. 87-1 ("Letter to Deputy Warden"). In his letter, Mr. Smith noted that Captain Perez and Counselor Supervisor Long are abusing their authority by taking his job and housing away for a Class C violation. *Id.* He noted that, under the rules in the current handbook, only class A and Class B violations would result in a loss of job and housing. *Id.* He stated that his "boss Chaplin Rosado has been advocating on [his] behalf to no avail." *Id.* Mr. Smith believed that he is being retaliated against in violation of the Administration Directive 2.17. As for a resolution, Mr. Smith requested that the rules and procedures in place be respected and honored; that staff members not engage in retaliatory conduct; and that he be allowed to regain his housing status as well as be allowed to return to his job. *Id.*

Following Mr. Smith's complaint, four additional inmates allegedly lost their housing statuses and jobs. Smith Affidavit ¶ 19. On December 19, 2018, Jack Thomas ("Mr. Thomas"),

one of the inmates who lost his housing status and job, submitted an Inmate Witness Statement Form in which he noted that he had pleaded to a class C violation with the understanding that he would not lose his job. Ex. A to Opp'n at 6, ECF No. 87-1 ("Thomas witness Statement"). A week after his plea, however, Mr. Thomas allegedly was moved. *Id.* According to Mr. Thomas, Captain Perez, the "unit manager," informed him that the reason he was being moved was "because Smith was making such a stick about him being moved they had to move us all to make it look fair[.]" *Id.* (internal quotation marks removed).

### 5.  Mr. Smith's Administrative Appeals

On December 10, 2018, Mr. Smith filed a grievance regarding his loss of his housing status and job as a result of his November 15, 2018 class B infraction, which he pleaded to a class C violation on November 26, 2018. Ex. B to Defs.' Mot. at 4, ECF No. 62-5 ("Dec. 2018 Grievance"). Mr. Smith requested "the immediate reinstatement of [his] job and housing status." *Id.* at 5. Dec. 2018 Grievance was denied on January 7, 2019. *Id.* at 4.

On January 9, 2019, Mr. Smith was transferred to Gardner Correctional Institution. Defs.' SOMF ¶ 6.

On February 7, 2019, Mr. Smith appealed the denial of his grievance, noting that the denial decision was "contradictory and impropriate" because a "class C infraction[] does not remove [an] inmate from housing and jobs." Dec. 2018 Grievance at 10.

On March 2, 2019, Deputy Warden Snyder wrote an e-mail to Deputy Warden Otero-Negron stating: "Captain Acus and I spoke on Friday regarding a grievance filed by Joshua Smith concerning his loss of job prior to leaving [Osborn]. He recommended that we update the inmate handbook to reflect this addition to the job class section as it currently isn't in there. This will probably be an angle [Mr. Smith] uses during his grievance process/hearing." Snyder and

Otero-Negron Email.

On March 5, 2019, Mr. Smith's final appeal of his Dec. 2018 Grievance was denied. *See* Dec. 2018 Grievance at 10 (noting that the"[p]ostings within the Osborn housing units do state that job classification eligibility requires you to be free from class "C" DRs within 60 days[]"). The denial decision also noted that Mr. Smith has "exhausted the [DOC's] Administrative Remedies," and that "[a]ppeal to Level 3 will not be answered." *Id.*

### B.  Procedural History

On November 7, 2019, Mr. Smith filed a Complaint asserting various constitutional violations seeking damages and equitable relief against several Connecticut Department of Corrections employees. Compl.

On May 8, 2020, the Court issued an Initial Review Order, permitting Mr. Smith's to proceed on his Fourteenth Amendment Equal Protection Clause claim against Lieutenant Perez, Deputy Warden Snyder, Captain Brian Perez, and Counselor Supervisor Long in their individual capacities; his First Amendment retaliation claim against Captain Perez and Counselor Supervisor Long in their individual capacities; and his Eighth Amendment claim against Captain Perez, Counselor Supervisor Long, Warden Wright, and Deputy Supervisor Snyder in their individual capacities. *See* IRO at 24.

The Court dismissed Mr. Smith's request for declaratory relief but permitted his injunctive relief  claims to proceed against Commissioner Rollin Cook and Warden Nick Rodriguez in their official capacities. The Court dismissed the claims against former Commissioner Semple, Captain Colon, Lieutenant Ramos, Correction Officer West, and Correction Officer Musa. *Id.*

The parties filed various motions for extension of time to file an Amended Complaint,

which the Court granted. *See, e.g.*, Mots. for Extension of Time, ECF Nos. 20, 28.

On December 8, 2020, Mr. Smith filed an Amended Complaint. Pl.'s Am. Compl., ECF No. 36.

On December 9, 2020, Defendants filed a motion to strike Mr. Smith's Amended Complaint because Mr. Smith failed to file a requisite motion detailing the proposed amendments. Def.' Mot. to Strike, ECF No. 37. The Court denied that motion on January 5, 2021. Order, ECF No. 39.

On April 2, 2021, Defendants moved to dismiss Mr. Smith's Amended Complaints. Mot. to Dismiss.

On April 15, 2021, Mr. Smith moved to stay the response to Defendants' motion to dismiss, pending a renewed IRO of his Amended Complaint. Pl.'s Mot. to Stay, ECF No. 44. The Court denied that motion on April 16, 2021 and *sua sponte* extended Mr. Smith's deadline to response to Defendants' motion to dismiss until May 21, 2021. Order, ECF No. 44.

On June 25, 2021, counsel appeared for Mr. Smith. Notice of Appearance, ECF No. 48.

On July 3, 2021, Mr. Smith filed an opposition to Defendants motion to dismiss. Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 49.

On February 3, 2022, the Court granted Defendants' motion to dismiss Mr. Smith's Fourteenth Amendment Equal Protection Clause claims, but permitted Mr. Smith's to proceed on his First Amendment Retaliation claim against Captain Perez and Counselor Supervisor Long in their individual capacities and his claim for injunctive relief against Commissioner Rollin Cook and Warden Nick Rodriguez in their official capacities. Order, ECF No. 50.

Also on February 3, 2022, the Court issued an order to show cause why Defendants CS Long, DW Otero-Negron, Officer Mignosh, Officer Romanelli, Warden Corcella, Warden

Butricks and Director Maiga should not be dismissed due to Mr. Smith's failure to time serve these Defendants. Order to Show Cause, ECF No. 51. Mr. Smith responded the same day, moving to voluntarily dismiss defendants Long, Ramos, Colon, Musa, West, Wright, Semple, Negron, Mignosh, Romanelli, Corcella, Butrick, and Maiga from the case. Notice of Voluntary Dismissal, ECF No. 52.

On February 4, 2022, the Court issued an order dismissing the defendants identified in Mr. Smith Notice of Voluntary Dismissal. Order, ECF No. 53. The same day, the Court entered a pretrial scheduling order in this case. Scheduling Order, ECF No.54.

On June 21, 2022, counsel for Mr. Smith filed a motion to withdraw. Mot. to Withdraw, ECF No. 58. On the same day, Mr. Smith filed a Motion for Continuance for Plaintiff to Seek New Counsel. Mot. for Continuance, ECF No. 57.

On June 21, 2022, the Court granted Mr. Smith's counsel's motion to withdraw. *See* Order, ECF No. 59. On the same day, the Court granted Mr. Smith motion to continue and modified the scheduling order. Order, ECF No. 60.

On June 22, 2022, Defendants filed an answer to the Amended Complaint. Defs.' Answer, ECF No. 61.

On June 29, 2022, Defendants filed a motion for summary judgment. *See* Mot.

On July 20, 2022, Mr. Smith filed a motion for extension of time to respond to the motion for summary judgment, *see* Motion for Extension of time, ECF No. 63, which the Court granted on July 22, 2022, *see* Order, ECF No. 64.

On August 29, 2022, Mr. Smith filed a motion to appoint counsel. Pl.'s Mot. for Appointment of Counsel ECF No. 66.

On September 15, 2022, the Court granted Mr. Smith's motion and directed the Clerk of

the Court to appoint counsel for Mr. Smith. Order, ECF No. 68.

On October 24, 2022, Pro Bono counsel appeared for Mr. Smith. Notice of Appearance, ECF No. 76.

Mr. Smith filed various motions for extension of time to respond to the motion for summary judgment, which the Court granted. Mots. for Extension of time, ECF Nos. 78, 81, 83. The Court granted those motions. Orders, ECF No. 79, 82, 84.

On March 21, 2023, Mr. Smith filed an opposition to the motion for summary judgment. Opp'n.

## II.   STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary

judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

Defendants move for summary judgment on Mr. Smith's First Amendment Retaliation claim on the grounds that Mr. Smith (1) failed to exhaust his administrative remedies, and (2) cannot establish that he was subjected to adverse action as a result of his engagement in protected conduct. Defendants also ask this Court to deny Mr. Smith's request for injunctive relief.

The Court will address each request in turn.

### A.   The Exhaustion of Administrative Remedies

The PLRA, which governs actions brought by prison inmates, requires a prisoner to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions. 42 US.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Failure to exhaust is an affirmative defense under the PLRA, *Jones v. Bock*, 549 U.S. 199, 217 (2007), and a defendant bears the burden of proving that an inmate did not exhaust his or her remedies prior to filing the action in court, *Johnston v. Maha*, 460 F. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment.").[5] A claim is not exhausted unless the

---

[5] Although a defendant bears the burden on this affirmative defense at all times, the plaintiff may still have to adduce evidence in order to defeat a motion for summary judgment. *See Hudson v. Kirkey*, No. 920CV0581 (LEK/DJS), 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021) (explaining that once defendant introduces evidence of a functional grievance system, plaintiff could not survive summary judgment without submitting competent evidence to indicate unavailability). While it is a defendant's burden to establish a plaintiff's failure to meet the exhaustion requirement, the plaintiff bears the burden of demonstrating that such a process was unavailable. *Brooks v. Mullen*, No. 14-CV-6690-FPG, 2020 WL 6158614, at *5 (W.D.N.Y. Oct. 21, 2020).

inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). ). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218.

The exhaustion requirement, however, may be excused when the remedy is not available in practice even if it is "officially on the books." *Ross v. Blake*, 578 U.S. 632, 642–643 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The United States Supreme Court has established three circumstances under which an inmate need not exhaust the administrative procedure as it is deemed unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–644. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Mr. Smith's First Amendment Retaliation claims, according to Defendants, are "based on three alleged retaliatory actions," by Captain Perez against Mr. Smith. Mem. at 3. Specifically, that Captain Perez: (1) labeled Mr. Smith a "snitch" in front of other inmates, informing the inmates that Mr. Smith was the reason for the changes in their housing and employments; (2) intimidated witness relevant to his disciplinary hearing; and (3) orchestrated the seizure, theft and destruction of his property. Mem. at 3–4. As to each of these claims, Defendant argue, they

13

are entitled to summary judgment because Mr. Smith failed exhaust the administrative remedies provided by the DOC.

In Defendants' view, although Mr. Smith filed four grievances[6] between December 2018 and January 2019, none of these grievances are adequate to satisfy Mr. Smith's exhaustion requirement under the PLRA. *See* Mem. at 14, 16, 21. In particular, Defendants argue that Mr. Smith's Dec. 2018 Grievance failed to "raise any complaint concerning captain Perez or any retaliatory actions taking by him," *id.* at 10, while his January 27, 2019 Grievance—which does raise Captain Perez's alleged retaliation—was "not timely filed in accordance with AD 9.6," *id.* at 12. Therefore, according to Defendants, Mr. Smith's First Amendment Retaliation claim is barred the PLRA. *Id.* at 22.

Mr. Smith responds that he properly exhausted the administrative remedies provided by the DOC. More specifically, Mr. Smith argues that the Dec. 2018 Grievance, which was conclusively denied on March 5, 2019, *see* SOMF ¶ 28, satisfies his exhaustion requirement under the PLRA. Opp'n at 6. Additionally, according to Mr. Smith, as the Dec. 2018 Grievance had not been addressed, on January 27, 2019, he supplemented[7] his filing with "additional actions [that] took place, all stemming from the November 15, 2018 event." *Id.* at 7.

According to Mr. Smith, Defendants rely on a "scrivener's error" in one section of his Dec. 2018 grievance form where he wrote the word "September" instead of "November" to

---

[6] Mr. Smith only rely on the December 11, 2018 and the January 27, 2019 grievances to argue that he exhausted his administrative remedies. *See* Opp'n at 6 (noting the grievances that exhausted his administrative remedies). The Court will therefore only consider these two grievances for the purposes of this ruling.

[7] Although the denial is dated January 7, 2019, Mr. Smith noted that he received the decision on February 4, 2019. *See* Dec. 2018 Grievance at 10 ("P.S. The Level 1 Grievance [decision] was receive[d] on 2-4-19 from my present counselor here at G.C.I."). On January 27, 2019, prior to having received the January 7, 2019 denial, Mr. Smith filed another grievance. *See* Ex. E to Defs.' Mot., ECF No. 62-8 ("Jan. 2019 Grievance"). According to Mr. Smith, this nearly 20-page grievance—which included a six-page statement detailing "additional actions" against him in connection with the November 2018 incident—merely provided "supplemental information" to his Dec. 2018 Grievance. Opp'n at 7.

suggest that this grievance did not "raise any complaints concerning Captain Perez or any retaliatory actions taken by him." *Id.* at 6. Mr. Smith argues that viewing the entirety of his grievance submission, including the numerous exhibits attached to it, it is clear that he was referring incidents that took place in November 2018. *Id.* Therefore, Mr. Smith argues, Defendants "take an overly narrow view" of the grievances that he filed in concluding that he failed to exhaust his administrative remedies. *Id.* at 5.

The Court agrees.

First, Defendants concede that Mr. Smith properly exhausted his December 11, 2018 Grievance. *See* Mem. at 10 n.2 ("Grievance #115-19-125 was subsequently denied on January 7, 2019, and the plaintiff filed a Level-2 appeal of this denial on February 7, 2019; however, his Level-2 appeal was denied on March 5, 2019.") (citing SOMF, ¶ 28). Defendants therefore do not raise an exhaustion defense with respect to this grievance. Rather, Defendants' arugment is that this grievance did not "raise any complaints concerning Captain Perez or any retaliatory actions taken by him." Mem. at 10. Instead, they argue, the Grievance "related to the plaintiff's 'due process' complaints concerning a disciplinary report he received in September 2018 and certain consequences of that disciplinary report." *Id.*

But, as Mr. Smith noted in his opposition, Defendants' contention that the Dec. 2018 Grievance related to a September 2018 due process complaint "is easily dismissed because based on Smith's exhibits, it is clear the word 'September' was a scrivener's error as it was meant to be 'November.'" Opp'n at 6. Indeed, in a letter—which appears to be attached as an exhibit to Mr. Smith's grievance—Mr. Smith noted the correct date of incidence. *See* Dec. 2018 Grievance at 6 ("On November 15, 2018, I received an infraction for unit rule violation (antenna outside cell window).").

In addition, contrary to Defendants' suggestion that Mr. Smith complained of "certain consequences" not at issue here, *see* Mem. at 10, Mr. Smith clearly identified "the consequences"  he sought to remedy in his grievance. *See* Dec. 2018 Grievance at 5 ("Resolution: I am requesting the immediate reinstatement of my job and housing status."). Lastly, both the DOC's initial response to, and the final disposition of, the Dec. 2018 Grievance make clear that the grievance related to Mr. Smith's loss his single cell status housing and job. *See* Dec. 2018 Grievance at 4 (explaining that a "finding of guilty shall not be required for removal or dismissal [from job assignment] to occur[]"); *id.* at 10 ("You filed a level I grievance regarding job loss at Osborn C.I.").

Therefore, on this record, a reasonable jury could find that Mr. Smith exhausted the administrative remedies available to him with respect to his First Amendment Retaliation claim. As a result, the Court will deny summary judgment on this ground.

Defendants suggest that because Mr. Smith's First Amendment Retaliation claim is "based on three alleged retaliatory actions," by Captain Perez against Mr. Smith, *see* Mem. at 3 (identifying the three alleged acts), he was required to seek separate administrative remedies for each of these acts, *see* Mem. at 9–22 (discussing Mr. Smith's failure to exhaust administrative remedies for each alleged act). This argument, likewise, does not preclude summary judgment.

Here, the Court permitted Mr. Smith to proceed on one First Amendment Retaliation claim. *See* IRO at 17 ("The Court will permit this claim to proceed against Captain Perez . . . "). This one claim, as the Court noted, was comprised of various actions, including those identified by Defendants. *See generally* IRO at 16–17.

Mr. Smith filed an initial grievance related to the November 15, 2018, which resulted in him losing his single cell status and his job and was followed by other alleged improper

retaliatory acts. *See generally* Dec. 2018 Grievance. Mr. Smith supplemented this grievance with

"additional actions [that] took place, *all* stemming from the November 15, 2018 event." Opp'n at

7.[8] The Defendants concede that Mr. Smith's December 11, 2018 grievance related to "certain

consequences of that disciplinary report." Mem. at 10.

Defendants' suggestion, therefore, that Mr. Smith was required to "seek informal

resolution and file a Level-1 grievance regarding" each of these acts, *see* Mem. at 10, 14, 17, is

precisely the type of "machination" and "opaque[ness]" of administrative remedy procedures

that the Supreme Court has warned against. *See Ross*, 578 U.S. at 642–43 (explaining that "an

administrative procedure is unavailable when it . . . [is] so opaque that it becomes,

practically speaking, incapable of use . . . [or] when prison administrators thwart inmates from

taking advantage of it through machination, misrepresentation, or intimidation[]"). The Court

will reject Defendants' attempt of "machination" of the administrative remedy procedures. *Id.*

While the affirmative defense of exhaustion as to each of these acts will remain available

to Defendants at trial as an evidentiary matter, on this record on summary judgment, a reasonable

jury may conclude that Mr. Smith exhausted the administrative remedies provided by the DOC.

Accordingly, summary judgment will be denied without prejudice to renewal, on the

basis that Mr. Smith failed to exhaust his administrative remedies as to each retaliatory act which

form the basis of his First Amendment Retaliation claim.

---

[8] Defendants argue that Mr. Smith's supplemental submission was simply an untimely filed grievance. *See* Mem. at 12 ("[W]hile the plaintiff did file a Level-1 grievance that raised complaints concerning Captain Perez labeling him a "snitch" and placing his safety at risk, this grievance was not timely filed in accordance with AD 9.6."). The Court agrees with Mr. Smith that, when placed in proper context, Mr. Smith's reference to "ongoing problems" in this Grievance, a reasonable jury may justifiably infer that Mr. Smith was merely supplementing his previous grievance, which related to November 15, 2018 incident. *See Anderson,* 477 U.S. 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

### B.      Adverse Action as a Result of Protected Conduct

To establish a First Amendment retaliation claim, a plaintiff must show: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Courts must "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

Defendants argue that Mr. Smith "utterly failed to adduce any admissible evidence to establish any retaliatory animus on the part of Captain Perez." Mem. at 24. Relying on an Affidavit from Captain Perez, Defendant assert that Captain Perez could not have had "retaliatory animus" towards Mr. Smith, because Captain Perez was "never made aware" that Mr. Smith had filed complaints against him. *Id.* Even assuming that Captain Perez was aware of the complaints against him, Defendants argue, Mr. Smith failed to "adduce further evidence establishing retaliatory motive in order to withstand summary judgment." *Id.* at 25. Therefore, according to Defendants, "no reasonable fact finder could find in favor of the plaintiff regarding his retaliation claim against Captain Perez." *Id.* at 26.

Mr. Smith responds that whether Captain Perez held retaliatory animus is a disputed question of material fact that precludes summary judgment. *See* Opp'n at 7–8. First, Mr. Smith asserts that Captain Perez was the "head of DR" and as such, he would be "derelict in his duties" to not be aware of any complaint filed. *Id.* at 8. In this case, according to Mr. Smith, Captain

18

Perez was "a signatory on the November 15, 2018 disciplinary report." *Id.* at 8.[9] As to specific

retaliatory motive against him, Mr. Smith notes that: (1) "he complained against four

correctional officers in his unit" prior to receiving his November 15, 2018 infraction, *id.* at 9;

Smith Affidavit ¶ 9; (2) he wrote a letter to Deputy Warden Otero-Negron with "documentary

support that Class C violation did not merit a loss in housing or job placement," Opp'n at 9, and

that he was being "retaliated against," Letter to Otero-Negron at 1; and (3) after these

complaints, Captain Perez informed at least one other inmate that "Smith was making such a

stink about him being moved they had to move us all for it to look fair," *see* Thomas Witness

Statement. Viewed together, Mr. Smith contends, this record "support[s] at least an inference

that Captain Perez had a 'retaliatory motive'" towards him. Opp'n at 9.

The Court agrees.

When determining retaliatory motive, courts often consider (1) temporal proximity

between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good

disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by

the officials showing motivation. *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015)

(citation omitted).

Mr. Smith asserts that he "was retaliated against less than two months after his

complaint." Opp'n at 10. Second, Mr. Smith "had no violations of any Direct Order, for seven

(7) years before November 16, 2018." Smith Affidavit ¶ 8. Third, Mr. Smith "was the first

person to be charged with a Class B infraction for placing a Digital Television Antenna outside

[his] cell window," *id.* ¶ 13 and that after he complained, this infraction was reduced to a Class C

violation, *id.* ¶ 14. Lastly, Mr. Smith produced a witness statement—this statement is dated

---

[9] Mr. Smith also notes that both the "November 26, 2018 . . . and December 4, 2018" advisory reports specifically identified Captain Perez. *Id.*

December 19, 2018, barely a week after Mr. Smith filed his December 11, 2018 grievance—
which shows that Captain Perez informed at least one other inmate that "Smith was making such
a stink about him being moved they had to move us all for it to look fair." Thomas Witness
Statement.[10] *See also* Snyder and Otero-Negron Email (confirming, in an email exchange
between prison officials, Mr. Smith's contention that class C violation did not merit a loss in
housing and job, and prison officials recommending that inmate handbook be updated). In short,
the record is replete with evidence from which a reasonable jury can justifiably infer that Captain
Perez has retaliatory animus toward Mr. Smith.[11]

On this record, viewing the evidence in the light most favorable to Mr. Smith and
drawing all inferences in his favor, a reasonable jury can conclude that captain Perez had a
retaliatory motive. Accordingly, summary judgment will be denied on this ground without
prejudice to renewal.

C.    **Injunctive Relief**

In the IRO, the Court permitted Mr. Smith to proceed on his request for "prospective
injunctive relief ordering defendants to  reinstate his single cell status and his job assignment[.]"
IRO at 11. Notably, the Court concluded that "Mr. Smith's injunctive relief claim may only
proceed against Defendants in their official capacities if they plausibly have the authority to grant

---

[10] It is worth noting that Mr. Smith's appointed *pro bono* Counsel has proceeded diligently to obtain evidence in
support Mr. Smith's retaliation claim. S*ee* Ex. F to Opp'n at 17, ECF No. 87-1 (Affidavit of Attempted Service)
(showing that at least three attempts were made to serve Mr. Thomas a subpoena seeking to depose him in
connection with this civil action).

[11] It is Defendants' burden to establish that the undisputed facts show that they are entitled to summary judgment.
Here, Defendants elected to relied on an affidavit from Captain Perez to advance their argument for summary
judgment on the basis of lack of retaliatory animus. *See generally* Mot. at 23–24. But in opposition, Mr. Smith
disputed Captain Perez's assertions using Mr. Smith's own Affidavit and his prison records prior to this litigation.
*See, e.g.,* Smith Affidavit ¶¶ 10, 16, 17; Thomas Witness Statement; Smith Advisory Report. Defendants therefore
improperly rely on disputed facts to advance their request for summary judgment on this basis. *See Robinson*, 781
F.3d at 44 ("For a court to grant summary judgment, the movant must 'show[] that there is no genuine dispute as to
any material fact . . . .'" (quoting  Fed. R. Civ. P. 56(a)) (alteration in original)).

him the prospective relief." *Id.* In other words, the sole legal impediment to Mr. Smith's injunctive

relief request that the Court identified in the IRO was whether "the warden at Osborn has the

authority to grant [Mr. Smith] his requested relief." *Id.* (citing *Vaughan v. Aldi*, No. 3:19-CV-00107

(JAM), 2019 WL 1922295, at *2 (D. Conn. Apr. 29, 2019).

      As an initial matter, the Court notes that equitable relief, such as the injunctive relief Mr.

Smith is requesting, is committed to the sound discretion of the district court. *See eBay Inc. v.

MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("The decision to grant or deny . . . injunctive

relief is an act of equitable discretion by the district court[.]"); *LeBlanc-Sternberg v. Fletcher*, 67

F.3d 412, 432 (2d Cir. 1995) (noting that "the granting or denial of injunctive relief lies within

the court's discretion"); *Clergeau v. Loc. 1181, Amalgamated Transit Union, AFL-CIO,* 162 F.

App'x 32, 35 (2d Cir. 2005) (affirming a district's injunctive relief decision issued after the jury

returned a verdict on liability). And it "is important to note that once a right and a violation have

been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for

breadth and flexibility are inherent in equitable remedies." *Ueno v. Napolitano*, No. 04 CV 1873

(SJ)VVP, 2007 WL 1395517, at *7 (E.D.N.Y. May 11, 2007) (quotation marks and citation

omitted) (alteration removed). Therefore, at this juncture of the litigation, the Court need only

decide whether Mr. Smith may request this injunctive relief remedy if a trier of fact finds that his

First Amendment right has been violated.

      With this background and context, the Court now turns to the parties' disagreement over to

Mr. Smith's injunctive relief request.

      Defendants argue that Mr. Smith's "claim for injunctive relief must be denied as it is

unrelated to his First Amendment retaliation claim. . . ." Mem. at 26. According to Defendants, Mr.

Smith's First Amendment Retaliation claim relates to Captain Perez: (1) labeling Mr. Smith a

"snitch"; informing other inmates he was the reason for change in their employment and housing; (2)

intimidating his witnesses at his disciplinary hearing; and (3) orchestrating the confiscation theft, and

destruction of Mr. Smith's property. *Id.* at 27. In their view, "none of these alleged harms have any

relation to the plaintiff's claims for injunctive relief," seeking reinstatement of his single cell status

and his job assignment. *Id.*

Mr. Smith responds that "[o]nce again, the defendants take a very narrow view" of his

claims. Opp'n at 10. According to Mr. Smith, the "basis for the complaints is . . . losing his single

cell and job privileges, all from the November[] 2018 incident," and as such, "a fact finder would

consider . . . (1) the substance  of [his] detailed history and origin of why he was stripped of his

housing and job status and (2) requested relief." *Id.* at 11. He argues that in the inmate request from

that he filed, "he specifically[] and unequivocally" requested "the immediate reinstatement of [his]

job and housing status." *Id.* He concludes that here, "Defendants Rodriguez and Cook could certainly

provide [him] the requested relief that was taken from him via Captain Perez' actions." *Id.*

The Court agrees.

Defendants' contention that the IRO limited the protected conduct at issue in this case to

Mr. Smith's filing of the December 4, 2018 Inmate Request Form is misplaced. *See* Mem. at 26–

27 ("[T]he plaintiff's retaliation claim against Captain Perez relates to certain actions allegedly

taken in retaliation for complaints raised by the plaintiff in a December 4, 2018 Inmate Request

Form[.]") The Court's IRO, with respect to Mr. Smith's First Amendment Retaliation claim, is

not so narrow.

First, the Court noted that "Mr. Smith alleges retaliation due to his filing grievances and

complaints in violation of his First Amendment rights to free speech, access to courts, and redress of

grievances." IRO at 15. While the Court does identify the December 4, 2018 grievance as a protected

conduct, *see id.* at 16, the Court's ruling does not indicate that that event is the sole protected conduct

at issue in this case. Indeed, the Court cited to paragraphs 27 and 44 of the Complaint, which provide

22

more context for the Court's ruling. *See* IRO at 16 (citing to both Paragraph 27 of the Complaint which notes that "on December 4, 2018, Smith wrote an Inmate Request Form . . . complaining that captain Perez and Long were discriminating against him . . ." and Paragraph 44 which notes that Mr. Smith was retaliated against due to his "complaints and grievances").

Moreover, in paragraph 28 of the Complaint, Mr. Smith explicitly states "Plaintiff believes and thereby alleges that . . . Captain Perez . . . use[d] the DR as an excuse to deprive Mr. Smith of his single cell status, to punish him for past grievances . . .." Compl. at 5. *See Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1 (D. Conn. Oct. 9, 2019) (explaining that a verified complaint may be considered in viewing a summary judgment purposes); *Walcott v. Connaughton*, No. 3:17-CV-1150 (JCH), 2018 WL 6624195, at *1, n.1 (D. Conn. Dec. 18, 2018) (same).

Therefore, both Mr. Smith's Complaint and the IRO make clear that the protected activities at issue in this case is not limited to Mr. Smith's December 4, 2018 Inmate Request Form, but also include "past grievances" and "complaints." Compl. ¶¶ 44, 28; IRO at 16. As a result, on this record, the Court concludes that Mr. Smith's request for injunctive relief is reasonably related to his first Amendment Retaliation claim.

Accordingly, the motion for summary judgment on Mr. Smith's injunctive relief claim is denied without prejudice.[12]

---

[12] It is notable that Defendants filed a motion to dismiss after the Court entered an IRO in this case, yet they did not challenge Mr. Smith's injunctive relief request on relatedness grounds in that motion. *See* Mot. to Dismiss at 31 ("The plaintiff . . . seeks declaratory and injunctive relief, including an order to reinstate his single-cell assignment, reinstate his job assignment, and to protect his mental and physical well-being . . . . [T]o the extent the plaintiff re-asserts claims for damages or declaratory relief against the defendants in their official capacities, such claims must be dismissed for the same reasons previously identified by the Court in its IRO."). Likewise, in their Answer, Defendants' only Affirmative Defense with respect to Mr. Smith's request for injunctive relief was that such relief is "barred by sovereign immunity." Defs.'s Answer, ECF No. 61 at 24 (June 22, 2022).

Defendants attempt, therefore, to raise a relatedness challenge for the first time, after the close of discovery, is prejudicial to Mr. Smith, as he is unable to seek discovery on this issue. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) (concluding that "prejudice may be considered and, in some cases, may be

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED**

without prejudice to renewal**.**

SO ORDERED at Bridgeport, Connecticut, this 31st day of March, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

determinative, where a defense is presented beyond the normal time limits . . . especially at a late stage in the litigation"). Nevertheless, there may be an issue as to whether Mr. Smith's requested relief is now moot, an issue that may be raised again without prejudice, consistent with any other part of this ruling. *See Baltas v. Chapdelaine*, No. 3:17-CV-242(RNC), 2022 WL 4599155, at *8 (D. Conn. Sept. 30, 2022) ("When an inmate is moved from the facility that is the site of his claim for injunctive relief, the request is generally moot.") (citing *Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989)).