## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSHUA SMITH,
    *Plaintiff*,

    v.

BRIAN PEREZ ET AL.,
    *Defendants*.

No. 3:19-cv-1758 (VAB)

### RULING AND ORDER ON MOTIONS *IN LIMINE*

Joshua Smith has filed four motions *in limine* seeking to preclude the introduction of

certain categories of evidence during the upcoming jury trial in this case. *See* Pl.'s Mot. in

Limine *Re: Conviction of Jack Thomas*, ECF No. 93 ("Thomas MIL"); Pl.'s Mot. in Limine *Re:*

*Conviction of Joshua Smith*, ECF No. 94 ("Smith Conviction MIL"); Pl.'s Mot. in Limine *Re:*

*Other Litigation*, ECF No. 95 ("Other Lit. MIL"); Pl.'s Mot. in Limine *Re: Admission of Witness*

*Statement*, ECF No. 96 ("Thomas Statement MIL"). Defendants also have filed an omnibus

motion *in limine*. *See* Defs.' Mot. in *Limine*, ECF No. 98 ("Defs.' MIL").

For the following reasons, Mr. Smith's motions *in limine* are **GRANTED in part** and

**DENIED in part** without prejudice to renewal at trial. Defendants' motion *in limine* is also

**GRANTED in part** and **DENIED in part** without prejudice to renewal at trial.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.  Factual Background

On November 7, 2019, Joshua Smith ("Mr. Smith"), an inmate who is currently housed at

Cheshire Correctional Institution ("Cheshire") under the custody of the Connecticut Department of

1

Correction ("DOC"),[1] filed this civil rights Complaint under 42 U.S.C. § 1983 against Captain Perez, Lieutenant Perez, Lieutenant Ramos, Counselor Supervisor Long, Correction Officer West, Captain Colon, Correction Officer Musa, Correction Officer West, Deputy Warden Snyder, Osborn Warden Gary Wright, and Commissioner Scott Semple, in their official and individual capacities. Compl., ECF No. 1 (Nov. 7, 2019) ("Compl.").

On initial review, the Court determined that Mr. Smith's case should proceed on his First Amendment Retaliation claim against Captain Perez[2] on his individual capacity for damages. Initial Review Order at 17, ECF No. 9 (May 8, 2020) ("IRO"). The Court also permitted Mr. Smith to proceed on his request for injunctive relief against defendants Cook and Rodriguez in their official capacities. *Id.* at 11. Defendants filed a motion to dismiss, *see* Def.'s Mot. to Dismiss, ECF No. 43 (Apr. 2, 2021) ("Mot. to Dismiss"), which the Court granted in part and denied in part, *see* Order, ECF No. 50. As result of the Court's Order on the motion to dismiss, and Mr. Smith's voluntary dismissal of certain defendants in this case, *see* Notice of Voluntary Dismissal, ECF No. 52, there are only three remaining defendants in this case: Captain Perez, Commissioner Rollin Cook and Warden Nick Rodriguez (collectively, "Defendants").

Defendants filed a motion for summary judgment, arguing that Mr. Smith failed to comply with the Prison Litigation Reform Act ("PLRA") and cannot establish the requisite elements of his retaliation claim against Captain Perez. *See* Defs.' Mot. for Summ. J., ECF No. 62 (June 29, 2022); Mem. in Support of Mot. for Summ. J., ECF No. 62-1 (June 29, 2022). Mr. Smith filed an opposition. *See* Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. 87 (Mar. 21, 2023). The Court

---

[1] The Court takes judicial notice of the information on the publicly available Connecticut DOC website. *See Inmate Information*, State of Connecticut Department of Corrections, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=223489; *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record").

[2] Mr. Smith initially named Counselor Supervisor Long as a defendant in this case. Mr. Smith, however, filed a notice of Voluntary Dismissal asking the Court to dismiss Counselor Supervisor Long form the case, which the Court granted. *See* Order, ECF No. 53 (Feb. 4, 2022).

denied Defendants' motion for summary judgment on March 31, 2023, and scheduled trial in this case for July 17, 2023. *See* Order, ECF No. 88.[3]

### B. Procedural History

The Court assumes familiarity with the procedural history of the case and includes only events relevant to the motions *in limine*.

Following the close of discovery in this case, Defendants filed a motion for summary judgment. *See* Defs.' Mot. for Summ. J. Plaintiff filed an opposition on March 21, 2023. *See* Pl.'s Opp'n to Defs.' Mot. for Summ. J.

On March 31, 2023, the Court denied without prejudice to renewal Defendants' motion for summary judgment. *See* Order, ECF No. 88. Because the Court ruled on Defendants' motion for summary judgment before Defendants filed a reply, the Court permitted Defendants to renew their motion for summary judgment in conjunction with any motions *in limine* to be filed in this case. *See* Order at 2 n.3.

On June 2, 2023, Mr. Smith filed four motions *in limine*. *See* Thomas MIL; Smith Conviction MIL; Other Lit. MIL; Thomas Statement MIL. On the same day, Defendants filed their omnibus motion *in limine*. *See* Defs.' MIL.

Also on June 2, 2023, Defendants filed their renewed motion for summary judgment. *See* Defs.' Renewed MSJ.

On June 16, 2023, Mr. Smith filed his opposition to Defendants' omnibus motion *in limine*. *See* Pl.'s Opp'n to Defs.' MIL, ECF No. 105 ("Smith Opp'n"). On the same day,

---

[3] Because the Court issued its ruling before Defendants had an opportunity to file a reply brief, the Court permitted Defendants to renew their motion for summary judgment in conjunction with any motions *in limine*, if Defendants believed the circumstances warranted it. *See* Order at 2 n.3. Defendants renewed their motion, *see* Defs.' Renewed Mot. for Summ. J., ECF No. 99 and Mr. Smith has filed an objection, *see* Pl.'s Opp'n to Defs.' Renewed MSJ, ECF No. 104. The Court denied the renewed motion for summary judgment. *See* Order, ECF No. 112 (July 14, 2023).

Defendants filed their Opposition to Plaintiff's motions *in limine*. *See* Defs.' Opp'n to Thomas MIL, ECF No. 100; Defs.' Opp'n to Smith Conviction MIL, ECF No. 101; Defs.' Opp'n to Thomas Statement MIL, ECF No. 96. Defendants also filed a response to Mr. Smith's motion *in limine* regarding other litigation indicating that Defendants do not object to that motion. *See* Defs.' Resp. to Other Lit. MIL, ECF No. 102.

Also on June 16, 2023, Mr. Smith filed an opposition to Defendants' renewed motion for summary judgment. *See* Pl.'s Opp'n to Defs.' Renewed MSJ, ECF No. 104.

On June 23, 2023, Mr. Smith filed a Reply in response to Defendants' opposition to Mr. Smith's motion *in limine* regarding statements by Mr. Thomas. *See* Pl.' Reply in Supp. Thomas Statement MIL, ECF No. 106. On the same day, Defendants filed a Reply in response to Mr. Smith's opposition to Defendants' omnibus motion *in limine*. Defs.' Reply in Supp. of Defs.' MIL, ECF No. 108.

Also on June 23, 2023, Defendants filed a Rely in further support of their renewed motion for summary judgment. *See* Defs.' Reply in Supp. of Renewed MSJ, ECF No. 107.

## II.   STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4).

A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955

(VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted). The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Mr. Smith's Motions *in Limine*

#### 1.   Joshua Smith's Conviction

Federal Rules of Evidence 609(b) places a limitation on the use of evidence of a conviction to impeach a witness when "more than 10 years have passed since the witness' conviction or release from confinement for [the conviction] whichever is later." *Id.* Thus, by its terms, Rule 609(b) provides that evidence of a crime is not excludable if the witness is still incarcerated for that crime. *See Blake v. Coughlin,* 205 F.3d 1321, 2000 WL 233550, * 1 (2d Cir. 2000) (unpublished table decision) (explaining that evidence of a crime for which a witness is incarcerated is "not excludable under Rule 609(b)" if that witness is still incarcerated for that crime); *Espinosa v. McCabe*, No. 9:10-CV-497 (MAD/CFH), 2014 WL 988832, at *4 (N.D.N.Y. Mar. 12, 2014) ("Since Plaintiff is currently incarcerated as a result of the felony convictions at issue, the Rule 609(b) prohibition does not apply."); *Coleman v. Durkin*, 585 F. Supp. 3d 208, 213 (N.D.N.Y. 2022) (same).

Mr. Smith moves to preclude Defendants from introducing evidence related to the basis for his incarceration. He argues that his conviction is more than 10 years old and should be precluded under Rule 609(b) because the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. Smith Conviction MIL at 1.

In response, Defendants dispute that Mr. Smith's conviction should be analyzed under Rule 609(b). *See* Opp'n to Smith Conviction MIL at 2 ("In this case, although the plaintiff appears to argue that his murder conviction should be analyzed under Rule 609(b), (ECF No. 94, p. 2–3), there can be no dispute that Rule 609(a)(1)(A) applies to the plaintiff's felony conviction for murder."). In their view, because Mr. Smith "has not been released from confinement for this conviction, as he is still serving his sentence of incarceration for this conviction," Rule 609(a)(1)(A) is the appropriate rule under which the Court should analyze Mr. Smith's conviction. *Id.* at 3. When analyzed under that rule, Defendants argue, the relevant factors favor admitting the conviction. *See id.* at 6.

The Court agrees, in part.

Here, because Mr. Smith is currently incarcerated as a result of the felony conviction at issue, the inadmissibility presumption under Rule 609(b) does not apply. The Court will therefore analyze Mr. Smith's felony conviction under Rule 609(a) rather than Rule 609(b). *Espinosa*, 2014 WL 988832, at *4 ("Since Plaintiff is currently incarcerated as a result of the felony convictions at issue, the Rule 609(b) prohibition does not apply.")

"Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," although "all Rule 609(a)(1) felonies are not equally probative of credibility." *Estrada*, 430 F.3d at 618. Violent crimes such as murder are generally not particularly probative of a witness' credibility. *See id.* at 617–18 (noting that convictions for violent or assaultive crimes generally do not relate to credibility). "[C]rimes requiring planning or preparation," however, "bear more strongly on veracity than violence alone suggests because planning indicates deliberate and injurious violation of basic standards rather than impulse or

anger, and usually it involves some element of deceiving the victim." *Id.* at 618 (internal quotation marks omitted).

Under Rule 609(a)(1), the statutory name of Mr. Smith's conviction, its date, and the sentence imposed are admissible unless "the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.* at 620–21 (quoting Fed. R. Evid. 403); *see also id.* at 616 (noting that "while it may be proper to limit, under Rule 609(a)(1), evidence of the underlying facts or details of a crime of which a witness was convicted, inquiry into the 'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed is presumptively required by the Rule, subject to balancing under Rule 403").

"In balancing the probative value against prejudicial effect under [Rule 609], courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Stephen v. Hanley*, No. 03-CV-6226 (KAM) (LB), 2009 WL 1471180, at *4 (E.D.N.Y. May 21, 2009) (citing *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)). While "all of these factors are relevant, 'prime among them is the first factor, i.e., whether the crime, by its nature, is probative of a lack of veracity.'" *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) (alterations omitted) (quoting *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977)). The district court has "wide discretion to impose limitations on the cross-examination of witnesses," *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002), which includes the discretion to "exclude the nature or statutory name of the offense," *Brown*, 606 F. Supp. 2d at 312.

Here, Mr. Smith's credibility will be important at trial and his murder conviction bears no resemblance to the alleged retaliation claim in this case, thereby reducing potential for prejudice. The other factors, however, favor the opposite conclusion. In particular, by the time of trial, more that twenty-seven years will have passed since Mr. Smith's 1996 murder conviction. *See Coleman*, 585 F. Supp. 3d at 214 (finding that a conviction from fifteen years ago was remote); *Twitty v. Ashcroft*, No. 3:04-CV-410 (DFM), 2010 WL 1677757, at *2 (D. Conn. Apr. 23, 2010) (noting that "the probative value of a conviction decreases as its age increases" (citation and internal quotation marks omitted)). Additionally, murder is not a crime of dishonesty that bears directly on the likelihood that Mr. Smith will testify falsely. *See Reeder*, 2019 WL 3732050, at *3 (explaining that "violent crimes bear marginally on the issue of truthfulness or veracity"); *Walker*, 974 F.3d at 207 ("[V]iolent crimes, however abhorrent, often are not crimes of dishonesty, and may not meaningfully reflect on a witness's truthfulness." (citation omitted)). Moreover, Mr. Smith's conviction for murder, although dissimilar to the issue of retaliation, is highly prejudicial because "because knowledge that [Mr. Smith] was convicted of . . . murder could cause the jurors to evaluate his worth as a witness based on that conviction." *Zulu v. Barnhart*, No. 9:16-CV-1408 (MAD/ML), 2019 WL 3239397, at *2 (N.D.N.Y. July 18, 2019); *see also Olutosin v. Gunsett*, No. 14-CV-00685 (NSR), 2019 WL 5616889, at *14 (S.D.N.Y. Oct. 31, 2019) (explaining that "a conviction of murder certainly carries a risk of unfair bias against a testifying witness").

Accordingly, "in order to strike the proper balance between the crime's admissibility under Rule 609(a) and its prejudicial effect" on Mr. Smith, *Zulu*, 2019 WL 3239397, at *2, the Court will permit Defendants to introduce evidence related to the fact that Mr. Smith was convicted of a felony, and the date of the felony conviction. The Court will preclude Defendants

from introducing any other details of Mr. Smith's conviction, including the essential elements, the statutory name of the offense, and the length of his prison sentence. *See Giles v. Rhodes*, No. 94 CIV. 6385 (CSH), 2000 WL 1510004, at *1 (S.D.N.Y. Oct. 10, 2000) ("[N]umerous courts have exercised their discretion to admit evidence of the fact that a witness has been convicted of a felony while barring evidence of the underlying details of the offense."); *Twitty*, 2010 WL 1677757, at *3 (holding that "evidence as to the date of the plaintiff's two felony convictions and the sentence is admissible," but that "the names of the convictions are not" (collecting cases)); *Olutosin*, 2019 WL 5616889, at *14 ("[G]iven the relatively minimal probative value of murder on veracity compared to the unfair bias it may create, as well as general the remoteness of the conviction, the Court will limit impeachment to the fact that he has a conviction and the sentence it entailed.").[4]

## 2.  Jack Thomas's Conviction

Evidence of prior convictions may be admitted in some circumstances for limited purposes such as proving motive or impeaching a witness's credibility. *See* Fed. R. Evid. 404(b) (noting that evidence of past crimes "is not admissible to prove a person's character" but that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"); Fed. R. Evid. 601(a) (stating that evidence of criminal conviction for a crime that "was punishable by

---

[4] The length of Mr. Smith's sentence, while often appropriate, may be unduly prejudicial in this context, and lead to unnecessary speculation by the jury about the nature of the underlying offense. As a result, the Court will exercise its discretion under Rule 403 to preclude inquiry into that information as well.

Mr. Smith also seeks to preclude Defendants from introducing his May 22, 2004, and September 10, 2012, weapon and assault convictions, respectively. *See* Smith Conviction MIL at 1. Defendants have clarified that they "only seek[] to impeach [Mr. Smith] as to his felony conviction for murder and do[] not intend on introducing evidence or referring to [Mr. Smith's] remaining convictions." Opp'n to Smith Conviction MIL at 1. Those conviction are therefore precluded. The Court will also preclude evidence of those convictions on alternative grounds under Rule 609(b) as they are more than 10 years old, *Reeder*, 2019 WL 3732050, at *2 ("confinement for one conviction has no effect on calculating the ten years applicable to another conviction" for the purpose of Rule 609(b) (internal quotation marks omitted)), and therefore presumptively inadmissible.

death or by imprisonment for more than one year . . . must be admitted, subject to Rule 403," for the purposes of "attacking a witness's character for truthfulness"). For convictions ten years or older, however, the "evidence of the conviction is admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect, and if the adverse party has an opportunity to contest its use." *Fraser v. Caribe*, No. 3:20-CV-00071 (SVN), 2023 WL 2889359, at *1 (D. Conn. Apr. 11, 2023) (citing Fed. R. Evid. 609(b)). Convictions over 10 years old should "be admitted very rarely and only in exceptional circumstances," as "convictions over ten years old generally do not have much probative value." Fed. R. Evid. 609(b) advisory committee's note.

Mr. Smith argues that Defendants should be precluded from introducing any evidence related to arrests or convictions of Jack Thomas, who allegedly witnessed some of the events related to Mr. Smith's retaliation claim against Captain Perez. *See* Thomas MIL at 1, 2. According to Mr. Smith, although the credibility of a "witness will always be an issue," here, the impeachment value of Mr. Thomas's violent crime conviction, which is nearly 10 years old, "bears no resemblance to the pending claim[] in this lawsuit." *Id.* at 3. Therefore, in his view, any probative value that the evidence of Mr. Thomas's arrests and convictions provides is substantially outweighed by the danger of unfair prejudice. *See id.* at 1.

Defendants, in response, argue that Mr. Thomas's conviction for assault is admissible under Federal Rules of Evidence 609(a)(1)(A) and that they should be permitted to impeach Mr. Thomas by disclosing the statutory name of his conviction—"Assault, 1st Degree-Serious Physical Injury"— and "the other essential facts of the conviction, including the date of the conviction and the sentence imposed." Opp'n to Thomas MIL at 1–2. According to Defendants, because Mr. Thomas's conviction and release from prison are within 10 years, under Rule

609(a)(1)(A), his conviction, for purposes of impeachment, is presumptively admissible. *See id.* at 3. Finally, Defendants argue that the relevant facts under Rule 403 all favor admissibility of Mr. Thomas' conviction.

The Court agrees, in part.

Here, according to Defendants, Mr. Thomas was convicted of Assault 1st Degree on July 1, 2013. *See* Opp'n to Thomas MIL at 3 (arguing that Mr. Thomas was "convicted of this offense within the past 10 years (July 1, 2013)" and that "he was released from prison for this offense within the past 10 years (December 28, 2020)") (footnote omitted). Trial in this case is scheduled for September 18, 2023, meaning more than ten years after Mr. Thomas's July 1, 2013 conviction. *See United States v. Brown*, 606 F. Supp. 2d 306, 313 (E.D.N.Y. 2009) (using the period between the conviction and "the first day of trial in the underlying action" to determine whether the 10-year period under Rule 609(b) has been met); *see also* 28 Fed. Prac. & Proc. Evid. § 6136 (2d ed.) (explaining that "most of the limited authority" on determining "that point in time by which the ten years must have run" under Rule 609(b) has concluded that it is by "the date of trial"); *United States v. Watler*, 461 F.3d 1005, 1008–1009 (8th Cir. 2006) ("Most of the cases interpreting Rule 609 agree with [Defendant] that the ten-year time limit should be measured from the date of the conviction or release to the date that the trial begins, if not the time of the witnesses' testimony." (collecting cases)). Thus, while it is true that Mr. Thomas's conviction was shy of ten years at the time the parties filed their respective motions *in limine*, by the trial date on July 17, 2023, the conviction will have satisfied the 10-year requirement.[5]

_____

[5] Defendants suggest that although Mr. Thomas was released from confinement on December 28, 2020, the Court should not consider that release date in calculating the timeframe under Rule 609(b) because Mr. Thomas "is still serving his sentence for this offense, as he is currently on special parole." Opp'n to Thomas MIL at 3 n.4. Defendants, however, do not cite any legal authority that supports their contention that a witness on "special parole" is presumed to be under confinement under Rule 609(b). Under Connecticut law, "special parole," however, is "incompatible with being incarcerated unless special parole has been formally revoked." *United States v. Pena*, No.

11

But, because Mr. Thomas was released from prison on December 28, 2020, meaning his release from prison for this offense is within the past ten year, Rule 609(b) does not apply. The Court will therefore analyze Mr. Thomas's conviction under Rule 609(a).

As the Court noted, *supra* at 6, violent crimes are generally not particularly probative of a witness' credibility. That is because conviction for violent crimes, such as assault, provide minimal impeachment value as these crimes do not involve dishonesty or untruthfulness. *See United States v. Estrada*, 430 F.3d 606, 618 (2d Cir. 2005) (noting that "crimes of violence generally have limited probative value concerning the witness's credibility and that theft crimes have greater impeachment value" (internal quotation marks omitted)); *United States v. Walker*, 974 F.3d 193, 207 (2d Cir. 2020) ("[V]iolent crimes, however abhorrent, often are not crimes of dishonesty, and may not meaningfully reflect on a witness's truthfulness." (citation omitted)); *Reeder v. Bishop*, No. 9:15-CV-1078 (MAD/TWD), 2019 WL 3732050, at *3 (N.D.N.Y. Aug. 8, 2019) (explaining that "violent crimes bear marginally on the issue of truthfulness or veracity").

Because Mr. Thomas's crime at issue here—Assault 1st Degree—will be more than ten years old at the time of trial, *see Twitty*, 2010 WL 1677757, at *2 (noting that "the probative value of a conviction decreases as its age increases" (citation and internal quotation marks omitted)), and the conviction has marginal impeachment value as it does not relate to dishonesty and untruthfulness, the Court will limit its introduction at trial. More specifically, the Court will permit Defendants to introduce evidence related to the fact that Mr. Thomas was convicted of a

---

3:18-CR-0198 (JBA), 2023 WL 4273746, at *2 (D. Conn. June 29, 2023) (citing *Pentland v. Comm'r of Corr.*, 200 Conn. App. 296, 306 (2020)). And for the purposes of Rule 609(b), "confinement" is defined as "physical confinement and, thus, does not include periods on probation or parole." 28 *Fed. Prac. & Proc. Evid.* § 6136; *see also United States v. Wise*, 581 F. Supp. 3d 656, 658 (D.N.J. 2022) ("The Court agrees that 'release from confinement' does not include the termination of a probationary period."); *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008) ("'[C]onfinement' for purposes of the ten-year time limit in Rule 609(b) does not include periods of probation or parole.").

felony, and the date of the felony conviction. The Court will preclude Defendants from introducing any other details of Mr. Thomas's conviction, including the essential elements, the statutory name of the offense, and the length of his prison sentence. *See Giles*, 2000 WL 1510004, at *1 ("[N]umerous courts have exercised their discretion to admit evidence of the fact that a witness has been convicted of a felony while barring evidence of the underlying details of the offense."); *Twitty*, 2010 WL 1677757, at *3 (holding that "evidence as to the date of the plaintiff's two felony convictions and the sentence is admissible," but that "the names of the convictions are not" (collecting cases)); *Olutosin*, 2019 WL 5616889, at *14 ("[G]iven the relatively minimal probative value of murder on veracity compared to the unfair bias it may create, as well as general the remoteness of the conviction, the Court will limit impeachment to the fact that he has a conviction and the sentence it entailed.").

Accordingly, Mr. Smith's motion to preclude Defendants from introducing evidence of Mr. Thomas's conviction is granted in part and denied in part.[6]

### 3. Admissibility of Mr. Thomas's Statement Under Rule 807

"Rule 807 excepts from hearsay a statement 'supported by sufficient guarantees of trustworthiness' that is 'more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts,' and the opposing party is given reasonable notice." *United States v. Abarca*, No. 19-3751-CR, 2021 WL 6803226, *6 (2d Cir. Dec. 15, 2021) (quoting Fed. R. Evid. 807(a)); A statement will be admitted under Rule 807

---

[6] The parties provide different dates for Mr. Thomas's conviction. Counsel for Mr. Smith notes the date of the Mr. Thomas' conviction as September 6, 2013, *see* Thomas MIL at 1, while Counsel for Defendants states the date as July 1, 2013. *See* Opp'n to Thomas MIL at 1 ("Mr. Thomas was convicted of this offense on July 1, 2013 and sentenced on September 6, 2013. Mr. Thomas received a sentence of 10 years incarceration, followed by 10 years of special parole."). The Court presumes that the date provided by counsel for Defendants—the keepers of inmate records—is the correct date. Nonetheless, to the extent that Mr. Thomas's conviction is definitively determined to be September 6, 2013 instead July 1, 2023, the Court's conclusion remains unchanged.

if "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party." *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004) (quoting *United States v. Bryce*, 208 F.3d 346, 350–51 (2d Cir. 1999)). "Congress intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances." *United States v. Griffin*, 811 Fed. App'x. 683, 686 (2d Cir. 2020) (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991)).

Mr. Smith seeks to admit Mr. Thomas's Inmate Witness Statement at trial, which he argues, reflects Mr. Thomas observation of aspects of Captain Perez's alleged retaliation against him. *See* Thomas Statement MIL at 3. Specifically, Mr. Smith asserts that Mr. Thomas was present when Captain Perez allegedly identified him as the reason why Mr. Thomas and other inmates were being moved. *Id.* at 4. According to Mr. Smith, Mr. Thomas is unavailable to testify at trial and he has refused to accept service or otherwise make himself available to for deposition. *Id.*

Defendants argue that Mr. Thomas's statement is hearsay and is not subject to Rule 807 exception. In their view, Mr. Thomas's statement "lacks sufficient guarantees of trustworthiness." Opp'n to Thomas Statement MIL at 3. Moreover, they argue that Mr. Thomas's statement is not more probative than other evidence that Mr. Smith can obtained through reasonable efforts. *Id.* at 9.

The Court agrees, in part.

Considering the context in which it was made, Mr. Thomas's statement fails to meet the first requirement of Rule 807, which "is that the proffered hearsay evidence must have

circumstantial guarantees of trustworthiness equivalent to those that justify hearsay testimony under the other hearsay exceptions." *United States v. Mejia*, 948 F. Supp. 2d 311, 316 (S.D.N.Y. 2013). First, Mr. Thomas's statement was not made under oath or in an adversarial proceeding subject to cross examination by Defendants. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 528 F. Supp. 3d 219, 233 (S.D.N.Y. 2021) ("When evaluating trustworthiness, courts consider . . . whether the testimony was given voluntarily, under oath, subject to cross-examination, and a penalty for perjury." (quotation marks omitted)). Next, although it is true, as Mr. Smith argues, that there is no indication that Mr. Thomas has recanted his testimony or that the statement was not voluntary, Mr. Thomas had a "potentially hostile relationship," *Coleman*, 585 F. Supp. 3d at 215–16, with Captain Perez, who was allegedly involved in Mr. Thomas losing his own single cell status and job. When viewed in this context, Mr. Smith fails to meet his "burden of establishing that the statement is especially trustworthy." *Batoh v. McNeil-PPC, Inc.*, 167 F. Supp. 3d 296, 311 (D. Conn. 2016) (citation and quotation marks omitted).

Accordingly, Mr. Smith's motion to admit Mr. Thomas's witness statement is denied without prejudice to renewal at trial.

To be clear, although the Court has denied Mr. Smith's request to admit the statement as a full exhibit under Rule 807, this ruling does not preclude Mr. Smith from using the relevant portions of Mr. Thomas's statement for the purposes of impeaching Captain Perez at trial. To do so, however, Mr. Smith must lay a sufficient foundation to satisfy the requirements of Rule 801(d)(2)—namely that the relevant testimony by Captain Perez was an "opposing party's statement" that was "made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). *See Leser v. U.S. Bank Nat. Ass'n*, No. 09-CV-2362 (KAM) (MDG), 2012 WL 6738402, at *4 (E.D.N.Y. Dec. 29, 2012) ("[W]hether the foundational predicate has been

established for admitting a statement" under Fed. R. Evid. 801(d)(2) "is preliminary matter to be determined by the trial court.").

### B. Defendants Omnibus Motion *in Limine*

#### 1. Witnesses

Failure to comply with initial disclosure requirements under this Court's Local rules and Rule 26(a)(1) of the Federal Rules of Civil Procedure can subject a party to preclusion under Rule 37(c)(1), which "provides that a party who fails to make such disclosures [under Rule 26] 'is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless.'" *Chevron Corp. v. Donzinger*, No. 11 Civ. 0691 (LAK), 2013 WL 5493996, at *1 (S.D.N.Y. Oct. 3, 2013) (quoting Fed. R. Civ. Proc. 37(c)(1)). Although Rule 37(c)(1) is "written in mandatory terms," the imposition of sanctions for abuse of discovery is "a matter within the discretion of the trial court." *Hein v. Cuprum, S.A., De C.V.*, 53 F. App'x 134, 136 (2d Cir. 2002) (citing *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995)).

"The Court has the ultimate discretion on whether to preclude witnesses from testifying at trial [under] Rule 37(c)(1)." *Leong v. 127 Glen Head Inc.*, No. CV135528 (ADS) (AKT), 2016 WL 845325, at *6 (E.D.N.Y. Mar. 2, 2016) (internal citations and quotation marks omitted). When considering whether to preclude evidence or witness testimony, district courts in this Circuit are instructed to assess several factors, including "the party's explanation for the failure to disclose," "the importance of the evidence to be precluded," "the prejudice suffered by the opposing party if the evidence were not precluded," and "the possibility of a continuance." *Widman v. Stegman*, No. 3:13-CV-00193 (BKS/DEP), 2015 WL 13832105, at *4 (N.D.N.Y. Apr. 28, 2015) (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)). Preclusion of

16

evidence for failure to comply with initial disclosure requirements is a "drastic remedy and should be exercised with discretion and caution." *NIC Holding Corp. v. Lukoil Pan Americas, LLC*, No. 05 CIV 9372 (LAK) (FM), 2007 WL 1467424, at *5 (S.D.N.Y. May 16, 2007) (quoting *Martinez v. Port Auth. of N.Y. & N.J.*, No. 01 Civ. 721 (PKC), 2005 WL 2143333, at *14 (S.D.N.Y. Sept. 2, 2005)).

Defendants have moved to exclude five witnesses from Mr. Smith's trial witness list, including include four current or former DOC inmates and one DOC employee or contractor, because, according to Defendants, Mr. Smith did not timely disclose these witnesses to them. *See* Defs.' MIL at 2–3. According to Defendants, Mr. Smith "had a duty to disclose" these witness under the Court's Initial Disclosure Standing Order and a "continuing duty to correct or supplement his Initial Disclosures throughout the course of this litigation." Defs.' MIL at 3 (first citing Standing Order, ECF No. 13 at 1; and then citing Fed. R. Civ. P. 26(e)). Because he failed to disclose these witnesses until approximate six weeks before trial, Defendants argue the Court should exclude these witnesses from testifying at trial.

In response, Mr. Smith argues that his witnesses should have the opportunity to testify because Defendants "can show no prejudice" for the alleged failure to timely disclose them. Smith Opp'n at 1. Moreover, Mr. Smith argues that the witnesses are inmates in Defendants' custody who are listed in documents in Defendants' possession. *Id.* at 2. In his view, Defendants "in fact had easier access to the witnesses" than he did, and that nothing prevented them from interviewing the witnesses before trial. *Id.*

The Court agrees, in part.

Mr. Smith began this suit *pro se* and he was not appointed counsel until after Defendants filed their motion for summary judgment. *See* Smith Opp'n at 1 (noting that Mr. Smith "initiated

this lawsuit as a Pro Se Plaintiff" who "ha[d] no legal training"). As Mr. Smith noted, the witnesses are all either in the custody of the DOC or employed by the DOC. *See id.* at 2. Moreover, two of the witness in question, Rosado and Thomas, have been known to Defendants as potential witnesses before Mr. Smith even filed this action.[7] Defendants, therefore, had sufficient notice of the identity of some of these witnesses. *See Olutosin*, 2019 WL 5616889, at *13 ("Plaintiff's delay in providing a Rule 26(a)(1) initial disclosure does not warrant preclusion of the witnesses listed therein," in part because "Defendants would have had sufficient notice of the identit[ies] [of the witnesses] and awareness of the context and subject matter of [their] potential testimony[ies].").

More importantly, however, other than in a conclusory fashion, Defendants have not articulated any harm or prejudice to them that would result from these witnesses being allowed to testify. *See, e.g.*, Defs. MIL at 3–4 ("The plaintiff should not benefit, and Captain Perez should not be prejudiced, due to the plaintiff's clear failure to comply with his discovery and disclosure obligations."). Because Defendants were "well aware of the identity of the undisclosed witness and the scope of their knowledge well before trial," *Fleet Cap. Corp. v. Yamaha Motor Corp., U.S.A.*, No. 01 CIV. 1047 (AJP), 2002 WL 31108380, at *2 (S.D.N.Y. Sept. 23, 2002) (citation omitted), Mr. Smith's failure to disclose these witnesses is harmless.

---

[7] Rosado was Mr. Smith's manager at the prison chapel, and he was mentioned on numerous occasions in the various grievances that Mr. Smith submitted in connection with his complaints against Captain Perez. *See, e.g.*, Smith's Trial Exhibit 6, *infra* Part III.B.2. In fact, in one of Mr. Smith's grievances, he noted Rosado has been advocating for him to get his job back. Thomas likewise had been known to the defendants as a potential witness since he completed an inmate witness statement form in connection with Mr. Smith's complaint. Indeed, this witness statement was signed by a DOC investigator. Although not dispositive, it is notable that the Court's Standing Disclosure Order relied on by Defendants also requires Defendants to provide "Copies of any grievances, complaints, notices, reports filed by the plaintiff, or correspondence from the plaintiff, in the possession of any individual defendant or the DOC that relate to the claims in the Complaint." Initial Disclosure Order at 2. In other words, as part of Defendants' compliance with this Order, they would have been on notice at least as to Rosado and Thomas as they are each mentioned in the various notices and reports filed by Mr. Smith. *See Mugavero v. Arms Acres, Inc.*, No. 03-cv-05724 (PGG), 2009 WL 1904548, at *5 (S.D.N.Y. July 1, 2009) (holding that failure to disclose certain witnesses was harmless where the defendants had reason to know during discovery period that those witnesses would have information relevant to the plaintiff's claims).

*See Angioletti v. Chao*, 720 F. App'x 41, 44 n. 2 (2d Cir. 2017) (summary order) (affirming a district court's denial of pretrial motion to preclude an undisclosed witness from testifying at trial because movant "did not articulate any prejudice" from non-movant's failure to timely disclose witnesses); *Weiping Liu v. Indium Corp. of Am.*, No. 16-cv-1080 (BKS/TWD), 2019 WL 6310977, at *5 (N.D.N.Y. Nov. 25, 2019) (refusing to preclude witness's testimony at trial on the grounds that "the prejudice is minimal and preclusion would be too harsh a remedy").

Accordingly, Defendants motion to preclude Mr. Smith's witnesses from testifying is denied.[8]

### 2. Mr. Smith's Trial Exhibits

Defendants move to preclude Mr. Smith's various exhibits,[9] which according to Defendants, largely "consist of [Mr. Smith's] prior written statements." Defs.' MIL at 5–7. In their view, in addition to being inadmissible hearsay, *id.* at 5, "many of these exhibits are irrelevant and/or any probative value of such exhibits are substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and/or wasting time," *id.* at 6. Defendants, however, note that they do not object to Mr. Smith's Exhibit 7, which consists of a hand-written letter to Deputy Warden Otero-Negron, "to the extent this constitutes the plaintiff's protected conduct in this case." *Id.* at 6 n.9.

---

[8] Defendants also move to preclude these witnesses from testifying under Rules 402 and 403. Omnibus MIL at 4. That argument, however, is premature. As the relevance and probative value of these witnesses' testimonies will become evident at trial, the Court will reserve a decision until that time.

[9] *See* Defs.' MIL at 5–6 (identifying Mr. Smith's Exhibit 1 (February 25, 2018 Letter to Commissioner Semple); Exhibit 4 (November 26, 2018 Advisor Report); Exhibit 5 (November 30, 2018 Letter to Deputy Warden Snyder); Exhibit 6 (December 5, 2018 Letter to Deputy Warden Otero Negron); Exhibit 7 (December 11, 2018 Grievance); Exhibit 8 (December 13, 2018 Advisor Report); Exhibit 10 (December 25, 2018 Letter to Commissioner Semple); Exhibit 12 (January 27, 2019 Grievance); Exhibit 13 (January 30, 2019 Inmate Request Form); Exhibits 14 (February 7, 2019 Grievance Appeal); Exhibit 16 (March 5, 2019 Response to Grievance Appeal); Exhibit 17 (June 25, 2019 Complaint).

Mr. Smith responds that, at this stage, the Court should reject any arguments "based on relevan[ce] and/or probative value" of the evidence. *See* Opp'n at 2. Moreover, he argues that because Defendants do not object to the admissibility of evidence that constitutes Mr. Smith's protected conducted, *i.e.*, complaints that he has written, they should likewise not object to the admissibility of his Exhibits 4, 5, 7, 12, 14, and 16. *See id.* at 3.

The Court disagrees, in part.

Mr. Smith's retaliation claim, as permitted by the IRO, is Captain Perez's retaliation against him for complaints filed against Captain Perez resulting in the December 11, 2018 Grievance. *See* IRO at 16 ("Mr. Smith has alleged that he filed an Inmate Request Form on December 4, 2018, complaining that Captain Perez and Counselor Supervisor Long were discriminating against him by depriving of him of his housing and job assignments, and, then, Captain Perez and Counselor Supervisor Long retaliated against him by informing the other inmates that he was the reason for their change in housing and employment." (citing Compl. ¶¶ 27, 44)). The Court then concluded that "Mr. Smith has alleged a plausible claim of retaliation." *Id.* Thus the protected conducted here is the entirety of Mr. Smith's initial grievance and the documentation in connection with that grievance, which here includes his December 11, 2018 Grievance (Exhibit 7) along with the December 4, 2018 Inmate Request Form to Deputy Warden Snyder (Exhibit 5) and his letter to Deputy Warden Oterno-Negron (Exhibit 6). His remaining prior written statements, however, are hearsay, and Mr. Smith has not articulated a basis for an exception for their admissibility.

Nonetheless, in light of the Court's clarification of the scope of Mr. Smith's protected activity, the Court will reserve its decision on Defendants' objection to these remaining exhibits

until Mr. Smith has had an opportunity to lay the necessary foundation for their admission at

trial.[10]

## IV.   CONCLUSION

For the following reasons, Mr. Smith's the motions *in limine* are **GRANTED in part** and

**DENIED in part** without prejudice to renewal at trial. Defendants' motion *in limine* is also

**GRANTED in part** and **DENIED in part** without prejudice to renewal at trial.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of July, 2023.

　　/s/ Victor A. Bolden　　　　　
Victor A. Bolden
United States District Judge

---

[10] Defendants also moved to exclude Mr. Smith's Exhibit 9 (Joshua Smith's inmate statement) and Exhibit 15 (Deputy Warden Snyder's E-mail to Deputy Warden Otero-Negron regarding updating the inmate handbook in light of Mr. Smith's Grievance). Consistent with the Court's ruling, *supra* Part III.A.3, that motion as to Exhibit 9 is granted. The Court reserves judgment as to Exhibit 15.